PEOPLE v CYR

PEOPLE v WITCHER

PEOPLE v NELSON

PEOPLE v SMITH

Docket Nos. 46025, 46962, 47056, 48199. Submitted November 5, 1981, at Detroit.—Decided February 17, 1982. Leave to appeal applied for.

Richard Cyr, Ezell Witcher, Warner Nelson and Frank Smith were convicted of conspiracy to violate the state's dog-fighting statute in the Wayne Circuit Court, Patrick J. Duggan, J. Defendants Cyr, Witcher and Smith were tried by a jury and defendant Nelson was convicted in a bench trial. They each appealed and the appeals were consolidated. *Held:*

1. Only where the number of alleged conspirators does not

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conspiracy § 6.

[2] 16 Am Jur 2d; Conspiracy § 40.

[3] 5 Am Jur 2d, Appeal and Error §§ 839, 841.

[4] 5 Am Jur 2d, Appeal and Error § 833.

[5] 41 Am Jur 2d, Indictments and Informations §§ 55, 56.

[6] 29 Am Jur 2d, Evidence § 788.
Authentication or verification of photographs as basis for introduction of evidence. 9 ALR2d 899.

[7] 5 Am Jur 2d, Appeal and Error § 884.
31 Am Jur 2d, Expert and Opinion Evidence § 16.

[8] 76 Am Jur 2d, Trial § 1043.
Reporters' notes read to jury. 50 ALR2d 176.

[9] 68 Am Jur 2d, Searches and Seizures §§ 74, 81, 111.
Sufficiency of description in search warrant, of apartment or room to be searched in multiple-occupancy structure. 11 ALR3d 1330.

[10] 16 Am Jur 2d, Conspiracy § 10.

[11] 5 Am Jur 2d, Appeal and Error § 875.
77 Am Jur 2d, Venue § 84.

[12] 21A Am Jur 2d, Criminal Law §§ 688, 689.
Pretrial publicity in criminal case as grounds for change of venue. 33 ALR3d 17.

[13] 75 Am Jur 2d, Trial § 61.
Prejudicial effect of improper failure to exclude from courtroom or to sequester separate state's witness in criminal case. 32 ALR2d 358.

exceed the minimum number of persons logically necessary to complete the substantive offense does Wharton's Rule, that an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission, apply. It does not apply to defendants' convictions.

2. A conviction for conspiracy may stand where an indictment charged the defendants with a single conspiracy and a number of separate and distinct conspiracies were proved at trial.

3. There was sufficient evidence to sustain the defendants' convictions.

4. The late endorsement of witnesses is within the discretion of the trial court with due regard for the defendant's right to a fair trial. Ordinarily, the late endorsement of witnesses should be permitted and a continuance granted so as to obviate any potential prejudice. Defendants were not denied a fair trial by the court's allowing the prosecutor to endorse witnesses late, since they had at least 11 days notice prior to trial and could have objected or requested a continuance had they felt prejudiced.

5. The court did not err in admitting photographs of an alleged dog-training device after a proper foundation was laid by a police officer. While the officer's speculation as to the operation of the device was hearsay, admission of his testimony was not reversible error.

6. The court did not abuse its discretion in allowing a veterinarian to give expert testimony as to the cause of injuries to the dogs seized by the police and regarding the fighting behavior of pit bull terriers.

7. The court did not abuse its discretion in refusing the jury's request to read back certain testimony.

8. The search warrant by which evidence later admitted was seized was not overbroad.

9. A magazine article allegedly written by a coconspirator and concerning a dog fight defendant Nelson allegedly participated in may have been hearsay and erroneously admitted, but any error was harmless in light of the overwhelming evidence of his guilt and the fact that the court did not appear to rely on it in convicting Nelson.

10. The conspiracy statute does not punish a mere agreement. Rather it prohibits an agreement to commit an offense

prohibited by law or to commit a legal act in an illegal manner and is not overbroad.

11. The mere existence of adverse pretrial publicity and the likelihood that a jury was exposed thereto does not necessitate a change of venue. The burden of proof rests on the defendant to show that the jurors have preconceived opinions as to his guilt.

12. The judge at the preliminary examination of defendant Cyr did not err in allowing a witness who had not been sequestered to testify. Sequestration of witnesses is a matter for the discretion of the trial court.

Affirmed.

1. CONSPIRACY — WHARTON'S RULE.

Wharton's Rule that an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission is applicable only where the number of alleged conspirators does not exceed the minimum number of persons logically necessary to complete the substantive offense.

2. CONSPIRACY — VARIANCE BETWEEN INDICTMENTS AND PROOFS — CONVICTIONS.

A conviction for conspiracy may stand where an indictment or information charged the defendants with a single conspiracy and a number of separate and distinct conspiracies are proven at trial.

3. APPEAL — BENCH TRIAL.

A trial court's findings in a bench trial will not be set aside unless clearly erroneous; special regard should be given to the trial court's opportunity to judge the credibility of the witnesses and the court's decision should be affirmed where there is sufficient evidence to support it.

4. APPEAL — JURY TRIAL — CRIMINAL LAW.

A jury verdict of guilty should not be overturned unless there is an absence of any direct or circumstantial evidence to prove an essential element of the crime.

5. CRIMINAL LAW — LATE ENDORSEMENT OF WITNESSES.

The late endorsement of witnesses is within the discretion of the trial court with due regard for the defendant's right to a fair trial; ordinarily, the late endorsement of witnesses should be

permitted and a continuance granted so as to obviate any potential prejudice.

6. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHS — PROPER FOUNDATION.

A proper foundation for the admission in evidence of a photograph is laid where an individual familiar with the scene photographed testifies that the photograph accurately reflects the scene photographed.

7. WITNESSES — EXPERT TESTIMONY — APPEAL.

The admission or exclusion of expert testimony is within the discretion of the trial court and a decision in that regard should not be reversed absent a clear abuse of that discretion.

8. TRIAL — READING TESTIMONY TO JURY.

Where a jury requests that testimony be read back to it, whether and to what extent the testimony is read back lies within the sound discretion of the trial court.

9. SEARCHES AND SEIZURES — SEARCH WARRANTS — SCOPE OF SEARCH WARRANTS.

A search warrant must describe with particularity the premises to be searched and the property to be seized, and the executing officers must narrowly follow that description.

10. CONSPIRACY — CONSTITUTIONAL LAW.

The conspiracy statute does not punish a mere agreement; rather it prohibits an agreement to commit an offense prohibited by law or to commit a legal act in an illegal manner and is not overbroad (MCL 750.157a; MSA 28.354[1]).

11. CRIMINAL LAW — VENUE — JUDICIAL DISCRETION.

The grant or denial of a motion for a change of venue is within the discretion of the trial court, and on appeal the decision of the trial court will not be overturned absent a clear abuse of discretion.

12. CRIMINAL LAW — VENUE — PRETRIAL PUBLICITY.

The mere existence of adverse pretrial publicity and the likelihood that a jury was exposed thereto does not necessitate a change of venue; the burden of proof rests on the defendant to show that the jurors have preconceived opinions as to his guilt.

13. TRIAL — SEQUESTRATION OF WITNESSES.

Sequestration of witnesses is a matter for the discretion of the trial court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Charles A. Haas & Associates,* for defendant Cyr.

*Jean D. Artman,* for defendant Witcher.

*Norris J. Thomas, Jr.,* Assistant State Appellate Defender, for defendant Nelson.

*Norman R. Robiner,* for defendant Smith.

Before: J. H. GILLIS, P. J., and BEASLEY and P. E. DEEGAN,* JJ.

BEASLEY, J. This consolidated appeal involves four defendants who were jointly tried on charges of conspiracy to violate the state's dog-fighting statute, MCL 750.157a; MSA 28.354(1) and MCL 750.49; MSA 28.244. Four other people, who were tried jointly with these defendants, are not involved in this appeal.

Defendants Richard Cyr, Ezell Witcher and Frank Smith were tried and found guilty by a jury. Defendant Warner Nelson was tried and found guilty in a bench trial. After being sentenced to three years probation, with the first six months to be spent in the Detroit House of Correction, defendants appeal as of right.

Defendants Smith, Nelson and Witcher claim on appeal that it was error to charge them with an ongoing conspiracy rather than multiple substan-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tive crimes or separate conspiracies based on each individual incident.

As to each defendant, it was charged that, from March 21, 1978, through and up to and including September 29, 1978, in Sumpter Township and other locations in Wayne and Monroe Counties, defendants:

"* * * did wickedly, maliciously and feloniously conspire, combine, confederate and agree together and with each other and with divers other persons for the purpose and with intent then and there engage in the promotion of dog fighting by owning, housing, training dogs for the purpose of fighting, by baiting and fighting dogs, by providing locations where dog fights took place, and by participating in dog fights, contrary to MCL 750.157a; and § 750.49, CL 1948 as amended by 1976 PA 392(1)."

MCL 750.49; MSA 28.244 states:

"(1) A person who owns, possesses, keeps, or uses any bull, bear, dog, cock, or other animal, or fowl, or bird for the purpose of fighting, baiting, or as a target to be shot at, as a test of skill in marksmanship; and a person who is a party to or who causes any such fighting, baiting, or shooting of any bear, dog, cock, or other animal, or fowl, or bird; and a person who shall rent or otherwise obtain the use of a building, shed, room, yard, ground, or premises for the purpose of fighting, baiting, or shooting any animal, fowl, or bird or shall knowingly suffer or permit the use of a building, shed, room, yard, ground, or premises belonging to him or under his control, for any of the purposes described in this section, shall be guilty of a felony punishable by a fine of not more than $5,000.00, or imprisonment for not more than 4 years, or both.

"(2) A person who is present at a building, shed, room, yard, ground, or premises where preparations are being made for an exhibition described in subsection (1),

or a person who is present at the exhibition, knowing that an exhibition is taking place or about to take place, is guilty of a misdemeanor.

"(3) All animals, equipment, devices, and money involved in a violation of this section shall be forfeited to the state.

"(4) This section shall not apply to conduct which is permitted by and is in compliance with Act No. 286 of the Public Acts of 1929, as amended, being sections 311.1 to 315.5 of the Michigan Compiled Laws, Act No. 191 of the Public Acts of 1929, as amended, being sections 317.71 to 317.84 of the Michigan Compiled Laws, or Act No. 134 of the Public Acts of 1957, as amended, being sections 317.301 to 317.313 of the Michigan Compiled Laws."

MCL 750.157a; MSA 28.354(1) states in part:

"Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein: * * * ."

Defendants' specific arguments are that the evidence showing the limited involvement of each defendant constituted a fatal variance from the charge of conspiracy and that Wharton's Rule applies to preclude prosecuting substantive acts of dog fighting as a conspiracy. Defendants further argue that the statute covers all the completed substantive offenses provided in this case and, therefore, it was error for the prosecutor to charge the defendants with conspiracy to violate the statute when the statute was violated directly.

Defendants' argument lacks merit. First, defendants' analogy of this case to the "wheel having spokes but no rim with Furman [a co-defendant] at the hub" is incorrect. Defendants cite *Kotteakos v*

*United States.*[1] In that case, there was one individual, a broker, who interacted separately with other individuals who obtained loans. There was no conspiracy because each transaction between the broker and the individual was unconnected to the others, as the individual was only interested in his particular loan.

In the present case, however, the defendants interacted on more than one occasion with each other. There were two organized dog fights at which a number of defendants were present. There were several roll (practice) matches attended by various defendants, and each defendant was shown to have kept and trained dogs to fight. Also, there was a plan to have another organized dog fight that did not transpire when the identity of Timberlake, an undercover agent, became known. There was no central figure with unrelated, separate transactions. The evidence showed that during the six-month period there were ongoing dog fights involving the defendants.

There was no evidence that each act relating to dog fighting was a separate conspiracy even though, as the trial court stated, one can always analyze the situation as a separate series. In the present case, the overall conspiracy was to promote the fighting of dogs. This involved the training and keeping of dogs, the roll matches, the organized fights, the maintaining of a place to fight dogs, and the betting on the dog fights. All of these acts contributed to promoting dog fighting. Therefore, the evidence did not indicate separate miniconspiracies, and, even though there were separate substantive acts prohibited by the statute, there was also an overall conspiracy.

In addition, defendants' argument what Whar-

---

[1] 328 US 750; 66 S Ct 1239; 90 L Ed 1557 (1946).

ton's Rule was violated in the instant case lacks merit. Wharton's Rule was stated in *People v Sesi*,[2] as follows:

" 'An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.' 1 Anderson, Wharton's Criminal Law and Procedure (1957 ed), § 89, p 191."

The Court went on to say that there was general agreement that Wharton's Rule was applicable only where the number of alleged conspirators does not exceed the minimum number of persons logically necessary to complete the substantive offense.

Defendants' reliance upon *People v Davis*[3] is misplaced. In that case, there was no ongoing conspiracy involving more than the number of persons needed to violate the statute. As a result, it could be found that the defendant conspired only with the suspect and, therefore, Wharton's Rule was applicable.

In the present case, defendants were charged with conspiracy to violate the dog-fighting statute. The statute does not necessarily require the cooperative acts of more than one person, as one person could violate the statute by fighting dogs alone. Betting on a dog fight would, of course, require the actions of more than one person. However, there were altogether 28 defendants charged in this case. Some defendants could not be located, one pled guilty, two were granted immunity for their testimony, the charge against one was dismissed, and eight were tried jointly, including the

[2] 101 Mich App 256, 263; 300 NW2d 535 (1980).

[3] 408 Mich 255; 290 NW2d 366 (1980).

defendants. Therefore, the number of alleged conspirators clearly exceeded the number logically necessary to complete the substantive offense. Wharton's Rule does not apply.

Further, defendants' argument that it was improper to charge one conspiracy when the proofs indicated separate and distinct conspiracies is meritless as held by this Court in *People v Missouri.*[4]

All four defendants involved in this appeal claim that there was insufficient evidence to convict them. Nelson had a nonjury trial. A trial court's finding in a bench trial will not be set aside unless clearly erroneous. Special regard will be given to the trial court's opportunity to judge the credibility of the witnesses and its decision will be affirmed where there is sufficient evidence to support the court's findings.[5]

In rendering its verdict against defendant Nelson, the trial court stated the following findings:

*"The Court:* As the court indicated, the court does find that a single, on-going conspiracy existed.

"This court believes the testimony of Mr. Timberlake that a large group of people gathered at Mr. Nelson's home preliminarily to going to the fight on June 10 and July 1st and that Mr. Nelson did, in fact, participate in an organized fight at the Wilcox farm.

"That Mr. Nelson did, in fact, allow and encourage roll matches in his basement where a man-made pit was set up.

"That Mr. Nelson did, in fact, plan with Mr. Williams the fight that was scheduled for September 30th.

"That Mr. Nelson did, in fact, prepare invitations to such fight and that Mr. Nelson possessed and intended to use dog fighting contracts.

"That Mr. Nelson submitted and prepared at least

---

[4] 100 Mich App 310, 345; 299 NW2d 346 (1980).

[5] GCR 1963, 517.1, *People v Vandergrift,* 107 Mich App 555; 309 NW2d 665 (1981).

one article on dog fighting to be submitted to the Sporting Dog Journal.

"Considering Mr. Nelson's involvement from the testimony given in this court, there is no doubt in this court's mind that Mr. Nelson knowingly and intentionally became a part of the overall conspiracy charged in the information and that Mr. Nelson did, in fact, intend to combine with others to violate the state dog fighting laws as set forth in the information."

There is sufficient evidence on the record to support the above findings, and the trial court's finding of guilt was not clearly erroneous.

Defendants Smith, Witcher and Cyr were tried by the jury. In reviewing a claim of insufficient evidence, the evidence must be viewed in the light most favorable to the prosecution. A jury verdict will not be overturned unless there is an absence of any direct or circumstantial evidence to prove an essential element of the crime charged.[6] A review of the record discloses that there was sufficient evidence to support defendants' convictions under the above standard of review. Each defendant was shown to have had a continued involvement in dog fighting and there were at least two incidents involving each of them. From the evidence, it can be inferred that there was a mutual understanding or agreement among the defendants to promote and fight dogs, contrary to the statute.

Defendants Smith and Witcher contend that the trial court abused its discretion by allowing the endorsement of additional witnesses on an amended information. We disagree. The late endorsement of witnesses is within the discretion of the trial court. That discretion should be exercised with due regard for the defendant's right to a fair

---

[6] *People v Barnes,* 107 Mich App 386; 310 NW2d 5 (1981).

trial.[7] Ordinarily, the late endorsement of witnesses should be permitted and a continuance granted so as to obviate any potential prejudice.[8]

Defendants were not denied a fair trial in the present case by the late endorsement of witnesses. They received notice at least by February 9, and the trial did not start until February 20. If they had felt prejudiced by the additional witness list, they should have objected and requested a continuance.

Defendants Smith and Witcher also claim that they were denied a fair trial by the prosecutor's asking a res gestae witness the following question:

*"Q. [By Ms. Clarke, Assistant Prosecutor]:* So, Mr. Rumbley, you don't know anything about anything, is that about it?

*"Mr. Rice [defense counsel for co-defendant Williams]:* Objection, that is not what his testimony is. He has answered all the questions that she asked him.

*"The Court:* Sustain the objection. His testimony speaks for itself."

Defendants Smith and Witcher claim that this question conveyed to the jury the prosecutor's sentiment that any witness whose testimony was favorable to them was lying. We disagree, noting that it was not even alleged that the witness knew either Smith or Witcher. Any prejudice to these defendants could have been eliminated by a curative instruction, had such an instruction been requested.

Defendants Smith and Witcher also contend that the trial court erred by allowing a police officer to

[7] *People v Sullivan,* 97 Mich App 488, 491; 296 NW2d 81 (1980), *People v Ward,* 85 Mich App 473, 479; 271 NW2d 280 (1978).

[8] *People v Umerska,* 94 Mich App 799; 289 NW2d 858 (1980), *People v Meadows,* 80 Mich App 680; 263 NW2d 903 (1977).

testify about the use of an alleged dog-training device and by admitting photographs of the device. The testimony and photographs in question were presented during the testimony of the police officer in charge of the search of the farm of a codefendant, Glen Wilcox. Since the officer was at the scene of the search, he was a witness with knowledge who was able to verify that the photographs accurately reflected what was photographed.[9] Thus, admission of the photographs into evidence was not erroneous.

In describing the photographs of the alleged dog-training device, the officer stated:

"The horizontal pole that pivots from the standard has a red milk carton attached to the end of the 10-foot pole, that pole swings in a 10-foot radius and the ground in that particular area is worn in a path in a 10-foot circle. That pivoting milk crate supposedly contained a cat with—."

While defendants are correct in their assertion that the statement regarding the cat was hearsay,[10] we find no reversible error.

First, the trial judge sustained the objection and defendants did not request a curative instruction. Second, since the device was found at Wilcox's farm, it is not clear that the jury even associated the device with defendants Smith and Witcher. Finally, the reference to the cat was isolated and not pursued or emphasized. Given the length of the trial and the amount of testimony taken, we do not find that reversible error occurred as a result of the brief reference to the cat.

Defendants Nelson, Smith and Witcher also ar-

[9] MRE 901(b)(1), *People v Riley,* 67 Mich App 320; 240 NW2d 787 (1976), *rev'd on other grounds* 406 Mich 1016; 289 NW2d 928 (1979).
[10] MRE 801.

gue that the trial court erred by allowing a veterinarian to give expert testimony regarding the cause of the injuries to the dogs seized and regarding the fighting behavior of pit bull terriers. Defendants claim that this testimony was beyond the expertise of the witness, as he had neither training nor experience in these areas.

It is within the trial court's discretion to admit or exclude expert testimony, and such exercise of discretion will not be reversed on appeal absent clear abuse.[11] Where the expert's particular training and experience in a special field of activity is largely unfamiliar to the jury, his opinion may be submitted for the jury's consideration.[12] The witness here was a veterinarian and familiar with animal injuries and behavior. We do not find that the trial judge clearly abused his discretion in admitting the testimony.

Defendants Smith and Witcher also contend that the trial court erred by refusing the jury's request for the "transcript" of certain portions of the testimony of Timberlake, the undercover agent. In particular, the jury wanted to see that portion of Timberlake's testimony relating to his first meeting with codefendants Furman and Cyr at Cyr's house. Cyr has not raised this issue on appeal.

When a jury requests that testimony be read back to it, whether the testimony is read and to what extent it is read lies within the sound discretion of the trial judge.[13] After the jury made its request in the present case, the trial judge discussed the request with defense counsel. Among the problems considered was the difficulty of sorting out the relevant portions of Timberlake's testi-

---

[11] *Wood v Posthuma*, 108 Mich App 226; 310 NW2d 341 (1981).

[12] *People v Robinson*, 107 Mich App 417; 309 NW2d 624 (1981).

[13] *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974).

mony. His testimony extended over seven days and
was taken down by more than one court reporter,
one of whom was not readily available at the time
of the request. Defense counsel all stated on the
record that they agreed with the response the trial
judge gave to the jury.

We find that the trial judge did not clearly
abuse his discretion by refusing the jury's request.
Furthermore, defendants Smith and Witcher were
not clearly prejudiced by the refusal to read testi-
mony that did not involve either of them.

Defendants Nelson and Cyr allege that the trial
court erred by refusing to suppress the items
seized pursuant to a search warrant because the
search warrant was an overbroad or general war-
rant listing 16 different addresses aggregating all
the evidence seen everywhere and photocopied as
a warrant to search each address. Further, they
contend that the affidavit did not supply sufficient
probable cause.

A search warrant must describe the premises to
be searched, and the property to be seized with
particularity, and the executing officers must nar-
rowly follow that description.[14] We find that in this
case it was not improper to use one search war-
rant to search several properties because: (1) there
were 16 premises to be searched and it was alleged
that all contained dogs and equipment used for
dog fighting; (2) the affidavit was very specific as to
the items to be taken, so the search warrant was
not general or open-ended; and (3) defendants do
not argue that the officers executing the search
warrant extended the scope of the search as to the
property taken. This was not a case of leaving it

[14] *People v Summers,* 68 Mich App 571, 579; 243 NW2d 689 (1976),
aff'd 407 Mich 432; 286 NW2d 226 (1979), *rev'd on other grounds* —
US —; 101 S Ct 2587; 69 L Ed 2d 340 (1981).

up to the discretion of the executing officers whether the items should be seized or not. The warrants related to dog fighting. Paraphernalia relating to dog fighting or evidence to prove residency could be properly seized.

We also find that the affidavit in the present case supplied sufficient probable cause. The affidavit set forth the information filed by Timberlake during his investigation. He had observed all of the items described in the search warrant at one or more of the defendants' residences. The affidavit contained information that was sufficient for a finding of probable cause that some of the items would be found at Nelson's and Cyr's houses. Timberlake specifically named Nelson's and Cyr's addresses in his search warrant, stating that equipment and dogs were observed at those addresses.

Defendant Nelson also alleges that the trial court erred by admitting into evidence a magazine article concerning a dog fight Nelson allegedly participated in. He claims that this article, allegedly written by a coconspirator, Jimmie Jones, was inadmissible hearsay because it was admitted without any showing that Jones was the author. While the article in question may have been hearsay, any error in its admission was harmless in light of the overwhelming evidence against Nelson and the fact that the trial judge did not appear to rely on the article in convicting Nelson.

Defendant Nelson next contends that the trial court erred by admitting into evidence photographs of dogs fighting. Witness Timberlake was able to sufficiently authenticate these photographs. We do not find that their admission was clearly erroneous.

Defendant Nelson also argues that the trial

court erred by convicting him and acquitting a codefendant, Lincoln Portis. A review of the record reveals that there was overwhelming evidence to convict Nelson and very little evidence against Portis. We find no error.

Defendant Cyr also contends that the conspiracy statute is overbroad because its broad scope includes expressions which fall within the constitutional guarantees of free speech and association. He argues that the statute requires only that there be an agreement between the alleged conspirators when it should require an overt act. He further maintains that, in order to restrict speech, that speech must be shown to be intended and likely to produce imminent and lawless action, and a mere agreement, without more, does not necessarily imply imminent lawless action.

While we agree with defendant Cyr that he has standing to raise this claim,[15] we find that it lacks merit. The conspiracy statute does not punish a mere agreement. Rather, it prohibits an agreement to commit an offense prohibited by law or to commit a legal act in an illegal manner. In *People v Missouri,*[16] the Court stated:

"For a conspiracy conviction to lie, there must be proof of two specific intents: (1) the intent to agree (conspire) and (2) the intent to accomplish the substantive offense. *People v McCracken,* 88 Mich App 286, 295; 276 NW2d 609 (1979), *People v Atley,* 392 Mich 298, 310-311; 220 NW2d 465 (1974). For there to be a conspiracy, it must be shown that the conconspirators shared the requisite intents. *Atley, supra,* 311-312. In addition, the following principles of law must be recalled:

" 'It must be shown that the respective conspirators

---

[15] *People v Chapman,* 80 Mich App 583, 587; 264 NW2d 69 (1978).
[16] 100 Mich App 310, 340-341; 299 NW2d 346 (1980).

intended to further, promote, or cooperate in the unlawful enterprise. The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. *People v Smith,* 296 Mich 176; 295 NW 605 (1941); *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953).' "

Therefore, conspiracy is more than a "mere agreement" as Cyr contends. The conspirators must intend to further, promote or cooperate in an unlawful enterprise. This is distinguishable from the case of mere teaching or advocacy. The state has the power to regulate the "speech" defined in the conspiracy statute, whether or not the agreement is directed to inciting or producing imminent lawless action, because it is the agreement itself that is prohibited and unlawful, not the mere fact that two or more people are agreeing to do something. We hold that the conspiracy statute is not overbroad and does include speech protected by the First Amendment.[17]

Defendant Cyr also argues that the trial court improperly denied his motion for a change of venue. In *People v Marsh,*[18] the Court stated:

"The denial of a motion for change of venue is reviewed under the abuse of discretion standard. *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978). The mere existence of adverse publicity and the likelihood that the jury was exposed to it does not necessarily require a change of venue. Rather, it is the burden of the defendant to show that the jurors have a preconceived opinion as to his guilt."

A review of the record here convinces us that defendant Cyr did not meet his burden of showing that any of the jurors had a preconceived opinion as to his guilt. We find that the trial court did not

[17] US Const, Am I; Const 1963, art 1, § 5.
[18] 108 Mich App 659, 669; 311 NW2d 130 (1981).

abuse its discretion in denying the motion for change of venue.

Defendant Cyr next contends that the judge, at the preliminary examination, erred by allowing a witness, who had not been sequestered, to testify despite the judge's own sequestration rule.

Defendant Cyr's preliminary examination was held on October 23, 26, and November 2, 1978. Prior to the preliminary examination, defense counsel requested that all witnesses be sequestered, and the judge granted that request. On October 23 and 26, the only witness who testified was Timberlake. At the end of his testimony, the prosecutor moved to bind Cyr and other defendants over for trial. The judge stated that Cyr would not be bound over but told the prosecutor that she could have one week to present additional testimony. On November 2, 1978, the prosecutor presented the testimony of a veterinarian and a police officer, Albert Conant. The judge overruled defense counsel's objection, based on the sequestration order, to the testimony of Officer Conant.

Sequestration of witnesses is a matter for the discretion of the trial judge.[19] Officer Conant testified that he had a conversation with Cyr when Timberlake was about 25 feet from them. This conversation provided incriminating evidence against Cyr. Timberlake did not testify as to this conversation. Therefore, there was no prejudice to Cyr since officer Conant's testimony related to a different conversation in which Timberlake did not participate. Under these circumstances, we do not find any abuse of discretion.

Defendant Cyr's final claim on appeal is that there was not probable cause to bind him over for trial. A review of the record of the preliminary

---

[19] *People v Martin,* 386 Mich 407, 424; 192 NW2d 215 (1971).

examination indicates that this claim is without merit.

Affirmed.