RITTENHOUSE v ERHART

Docket No. 60844. Submitted January 19, 1983, at Detroit.—Decided June 22, 1983. Leave to appeal applied for.

Karen Rittenhouse, plaintiff Donald Rittenhouse's minor daughter, and Kerry Erhart, defendant Earl Erhart's son, were asphyxiated by carbon monoxide fumes while occupying Earl Erhart's automobile. Kerry died as a result of carbon monoxide poisoning while Karen survived but has never fully recovered. Plaintiff, Donald Rittenhouse, next friend of Karen Rittenhouse, brought an action for damages in the Oakland Circuit Court against Earl Erhart, Tuffy Service Centers, Inc., North Woodward Mufflers, Inc., and General Motors Corporation. Tuffy Service and North Woodward thereafter filed a third-party claim against Supreme Muffler Division of Arvin Industries, Inc. Prior to trial, plaintiff settled with General Motors

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 51 Am Jur 2d, Limitation of Actions §§ 188, 190.

Time of existence of mental incompetency which will prevent or suspend running of statute of limitations. 41 ALR2d 726.

[2] 51 Am Jur 2d, Limitation of Actions § 271.

[4] 53 Am Jur 2d, Master and Servant § 408.

Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa. 92 ALR2d 533.

[5] 66 Am Jur 2d, Release §§ 37, 38.

Release of one joint tortfeasor as discharging liability of others: modern trends. 73 ALR2d 403.

[6] 31 Am Jur 2d, Expert and Opinion Evidence § 16.

[7] Am Jur 2d New Topic Service, Comparative Negligence § 56.

75 Am Jur 2d, Trial § 623.

Doctrine of comparative negligence and its relation to doctrine of contributory negligence. 32 ALR3d 463.

[8] 29 Am Jur 2d, Evidence § 249 et seq.

[9] Am Jur 2d New Topic Service, Comparative Negligence §§ 20 et seq., 47.

63 Am Jur 2d, Products Liability § 91.

Retrospective application of state statute substituting rule of comparative negligence for that of contributory negligence. 37 ALR3d 1438.

[10] Am Jur 2d New Topic Service, Comparative Negligence §§ 46, 47.

[11] 5 Am Jur 2d, Appeal and Error § 545 et seq.

for $195,000. During the trial, plaintiff settled with Supreme Muffler for $5,000 and with Tuffy Service for $195,000. Tuffy Service then stipulated that its complaint against Supreme Muffler could be dismissed. The trial court, George LaPlata, J., granted a directed verdict for Supreme Muffler on North Woodward's third-party complaint. The jury found that Karen Rittenhouse had sustained $1,500,000 in damages but that she was 20% negligent. The jury also found that North Woodward was negligent and that Earl Erhart was not negligent. The trial court thereafter entered a $805,000 judgment against North Woodward. North Woodward appeals from that judgment and the plaintiff cross-appeals. *Held:*

1. Plaintiff's suit against North Woodward was not barred by the statute of limitations even though plaintiff was appointed next friend in 1974 and filed the suit in 1976. Plaintiff's claim was tolled until Karen's disability of insanity was removed. The appointment of a next friend for an insane person does not remove such a disability.

2. The trial court did not err in instructing the jury that Karen's mental impairment could toll the statute of limitations even if the condition resulted from ingesting sleeping pills instead of from carbon monoxide poisoning.

3. The trial court did not err in denying North Woodward's motion for summary judgment after plaintiff settled with Tuffy Service.

4. The trial court did not abuse its discretion in allowing plaintiff's expert witnesses to testify on the liability issues even though their names had not been disclosed before trial.

5. The trial court did not err in excluding evidence regarding Karen Rittenhouse's alleged prior use of mescaline since such evidence was unfairly prejudicial and not sufficiently probative.

6. The trial court did not abuse its discretion in excluding evidence, regarding the fact that both Kerry and Karen were found nude, after finding that the prejudicial impact of such evidence outweighed its probative value.

7. The trial court properly granted Supreme Muffler's motion for a directed verdict after plaintiff struck the improper design allegation from his complaint since North Woodward's third-party complaint against Supreme Muffler merely prayed for indemnity from the plaintiff's allegation of improper design.

8. The comparative negligence provision of the products liability statute does apply to a breach of warranty action, may be applied retroactively and is constitutional.

9. The trial court correctly awarded interest on the judgment

and not the entire amount of damages found by the jury. However, the trial court, in calculating the amount of the judgment, should have first subtracted the $395,000 in settlements from the $1,500,000 in damages before subtracting the 20% due to comparative negligence. The trial court should have, therefore, awarded a judgment of $884,000 rather than $805,000.

10. Plaintiff did not properly raise his allegation that the trial court erred in awarding prejudgment interest from the date of the amended complaint against North Woodward rather than from the date of the original complaint against Earl Erhart because the allegation was raised in his reply brief in the cross-appeal and did not reply in any way to North Woodward's brief on the cross-appeal.

Affirmed as modified.

1. LIMITATION OF ACTIONS — INSANITY.

The claim of an insane person is tolled until the disability of insanity is removed (MCL 600.5851[1]; MSA 27A.5851[1]).

2. LIMITATION OF ACTIONS — GUARDIAN AND WARD — NEXT FRIENDS — INSANITY.

The appointment of a guardian or a next friend for an insane person does not remove the disability of insanity.

3. LIMITATION OF ACTIONS — INSANITY.

A condition of mental impairment is sufficient to toll a statute of limitations if it is such a condition of mental derangement as to actually bar the sufferer from comprehending rights he is otherwise bound to know.

4. RELEASE — MASTER AND SERVANT — *RESPONDEAT SUPERIOR.*

The release of a servant operates to release the master and vice-versa where the claim is based on a *respondeat superior* theory.

5. RELEASE — JOINT TORTFEASORS.

The release of one joint tortfeasor does not necessarily release all the others (MCL 600.2925[2]; MSA 27A.2925[2]).

6. WITNESSES — EXPERT TESTIMONY — ENDORSEMENT OF WITNESSES.

The admission or exclusion of expert testimony by expert witnesses whose names have not been disclosed before trial is within the trial court's discretion.

7. JURY — JURY INSTRUCTIONS — HARMLESS ERROR — PRESUMPTION OF ORDINARY CARE — COMPARATIVE NEGLIGENCE.

The erroneous use of a jury instruction that because of the

plaintiff's loss of memory about the incident plaintiff is entitled to a presumption that he used ordinary care is harmless error where the jury finds the plaintiff comparatively negligent.

8. EVIDENCE — RELEVANT EVIDENCE — RULES OF EVIDENCE.

A trial court may exclude relevant evidence where the prejudicial impact of the evidence outweighs its probative value (MRE 403).

9. PRODUCTS LIABILITY — COMPARATIVE NEGLIGENCE — CONSTITU-TIONAL LAW — RETROACTIVITY — BREACH OF WARRANTY.

The comparative negligence provision of the products liability statute is constitutional, may be applied retroactively and may be applied in a breach of warranty action (MCL 600.2949; MSA 27A.2949).

10. TORTS — JUDGMENTS — COMPARATIVE NEGLIGENCE — SETTLE-MENTS — INTEREST.

A trial court, in determining the proper amount to be awarded as a judgment in a tort action where the jury determined the plaintiff's comparative negligence to be 20% and where the plaintiff has settled with the other alleged tortfeasors, should first subtract the settlement figure from the amount of damages determined by the jury prior to subtracting the percentage due to comparative negligence; interest may properly be awarded on such judgment, and not on the entire amount of damages determined by the jury.

11. APPEAL — ISSUES ON APPEAL.

A plaintiff does not properly raise an issue on appeal regarding a trial court's award of prejudgment interest where the plaintiff did not raise the issue in his cross-appeal brief but instead raised it in his reply brief in the cross-appeal and where such issue did not reply in any way to the defendant's brief on the cross-appeal.

*Zeff & Zeff* (by *Michael T. Materna),* and *Gromek, Bendure & Thomas* (by *Mark R. Bendure),* of counsel, for Donald Rittenhouse.

*Moore, Sills, Poling & Wooster, P.C.* (by *James M. Prahler),* for North Woodward Mufflers, Inc.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.*

(by *John M. Heaphy*), for Supreme Muffler Division of Arvin Industries, Inc.

Before: T. M. Burns, P.J., and Wahls and Hood, JJ.

Per Curiam. On August 26, 1981, the trial court entered a $805,000 judgment against defendant North Woodward Mufflers, Inc.[1] Defendant appeals and plaintiff cross-appeals as of right.

On June 14-15, 1973, Karen Rittenhouse (plaintiff Donald Rittenhouse's daughter) and Kerry Erhart (defendant Earl Erhart's son) were asphyxiated by carbon monoxide fumes while occupying Earl Erhart's 1969 Chevrolet. Kerry was later pronounced dead as a result of carbon monoxide poisoning. Karen Rittenhouse survived, but spent several months in a hospital and rehabilitation center. She has never fully recovered.

Eventually, plaintiff sued Earl Erhart, Tuffy Service Centers, Inc., North Woodward Mufflers, Inc., and General Motors Corporation. Defendants Tuffy Service and North Woodward filed a third-party claim against Supreme Muffler Division of Arvin Industries, Inc.

Just before trial, plaintiff settled with General Motors for $195,000. Later, during trial, plaintiff settled with Supreme Muffler for $5,000 and with Tuffy Service Centers for $195,000. Tuffy Service then stipulated that its complaint against Supreme Muffler could be dismissed. The trial court granted a "directed verdict" for Supreme Muffler in defendant's third-party complaint. Eventually, the jury found that Karen Rittenhouse had sustained $1,500,000 in damages but that she was

---

[1] For simplicity, "defendant" will refer to defendant North Woodward Mufflers, Inc.

20% negligent. It also found defendant to be negligent but found Earl Erhart not negligent.

Defendant first argues that plaintiff's suit against it has been barred by the statute of limitations because it was not filed against North Woodward until 1976 and plaintiff had been appointed next friend for Karen Rittenhouse in 1974. However, MCL 600.5851(1); MSA 27A.5851(1) tolled the claim until Karen's disability of insanity was removed. In *Paavola v Saint Joseph Hospital Corp,* 119 Mich App 10; 325 NW2d 609 (1982), the Court held that the appointment of a guardian for an insane person did not remove the disability. We find that the same conclusion applies to the appointment of a next friend.

Defendant next argues that the trial court erred in instructing the jury that Karen's mental impairment could toll the statute of limitations even if the condition came from having ingested sleeping pills instead of the carbon monoxide poisoning. Defendant claims that the mental incompetence must have come from the accident itself. However, Michigan law makes no such distinction. A condition of mental impairment is sufficient to toll the statute if it is "such a condition of mental derangement as to actually bar the sufferer from comprehending rights he is otherwise bound to know". *Valisano v Chicago & NW R Co,* 247 Mich 301, 304; 225 NW 607 (1929).

Defendant next argues that the trial court should have granted its motion for summary judgment after plaintiff had settled with Tuffy. A release of a servant operates to release the master and vice-versa if the claim is based on a *respondeat superior* theory. *Geib v Slater,* 320 Mich 316; 31 NW2d 65 (1948). However, the release of one joint tortfeasor does not necessarily release all the

others. MCL 600.2925(2); MSA 27A.2925(2). In the present case, both defendant and Tuffy Muffler denied that they had acted jointly or that one would have been responsible merely because the other was negligent. Moreover, neither side presented evidence in this case that both of these defendants were not wholly separate and independent enterprises.

Defendant next argues that the trial court abused its discretion in allowing plaintiff to call expert witnesses on the liability issue even though their names had not been disclosed before trial. Whether or not to allow such a witness to testify is within the trial court's discretion. *People v Cyr,* 113 Mich App 213; 317 NW2d 857 (1982), *lv den* 414 Mich 888 (1982); *Wood v Posthuma,* 108 Mich App 226; 310 NW2d 341 (1981), *lv den* 413 Mich 923 (1982); MRE 702. In this case, the parties did not exchange witness lists. Instead, the answers to the 1979 interrogatories had said that additional witnesses would be mentioned when they later became known. The trial started May 18, 1981. Three days later, plaintiff told defendant that it intended to call Sheldon Rabinovitz and Stanley James. While Rabinovitz testified on June 4, James testified on June 5. We do not believe that the trial court abused its discretion on this issue.

Defendant further argues that the trial court erred when it instructed the jury that, because of Karen's loss of memory about the incident, plaintiff was entitled to a presumption that she had used ordinary care. SJI2d 10.09. However, the question of whether or not this instruction was properly given in this case is irrelevant to this appeal. Where a jury has found that the plaintiff was comparatively negligent, the use of this instruction is harmless error. *Bell v Merritt,* 118 Mich App 414, 420; 325 NW2d 443 (1982).

Defendant next argues that the trial court abused its discretion in ruling out relevant evidence. A blood test had shown that Karen Rittenhouse had taken Doriden that evening. Defendant, therefore, wished to show that she had in the past taken mescaline. However, MRE 403 allows a trial court to exclude relevant evidence when unfairly prejudicial. Evidence of the prior use of mescaline is definitely prejudicial. Defendant has not really shown how it is sufficiently probative. It does not show how its use could have caused Karen's injuries.

Both Kerry and Karen were found nude. The trial court also excluded this fact from evidence. Defendant, in arguing comparative fault (see *Anderson v Harry's Army Surplus, Inc,* 117 Mich App 601; 324 NW2d 96 [1982]), wished to prove the time frame through this evidence. If she had taken the Doriden after sexual intercourse, the evidence would be relevant to show proximate cause. However, the important point for defendant is that she actually took the Doriden. When she took it is not as relevant. Therefore, the trial court did not abuse its discretion in ruling that the prejudicial impact outweighed the probative value.

Defendant next argues that the trial court denied it a fair trial by constantly overruling its objections and denying its motions. After reviewing the record, we do not agree. Most of the instances defendant complains of concern issues that we have just covered.

Defendant last argues that the trial court should not have granted third-party defendant Supreme Muffler's motion for a directed verdict. Both defendant and Tuffy Muffler had sued Supreme Muffler claiming indemnity for plaintiff's allegation of improper design. Supreme Muffler had just settled

with plaintiff for $5,000 in exchange for plaintiff's striking the improper design allegation from his complaint. But even though plaintiff was alleging that defendant had improperly installed the muffler, defendant could defend by claiming improper design and that Supreme Muffler is instead, therefore, the negligent party. See generally *Skinner v D-M-E Corp,* 124 Mich App 580; 335 NW2d 90 (1983). In fact, some evidence was presented to support this theory. However, at no time did defendant ever attempt to amend its third-party complaint against Supreme Muffler. The complaint, as it stood when the trial court dismissed Supreme Muffler from the lawsuit, merely prayed for indemnity. Therefore, the trial court properly granted Supreme Muffler's motion.

Plaintiff has cross-appealed on four issues. First, he argues that: (1) the comparative negligence provision of the products liability statute, MCL 600.2949; MSA 27A.2949, does not apply to a breach of warranty action; (2) even if it does, the statute, effective December 13, 1978, should not be applied retroactively; and (3) if it is applied retroactively, it is unconstitutional. However, all three of these issues were decided against plaintiff in *In re Certified Questions,* 416 Mich 558; 331 NW2d 456 (1982).

Plaintiff next argues that the trial court erred in its interest calculations. The jury had found $1,500,000 in damages. The trial court then subtracted 20% (plaintiff's comparative negligence) from this total. It then subtracted the $395,000 in settlements. Last, it awarded interest based on the remaining $805,000. However, we find that the trial court correctly awarded interest on the judgment and not additionally on the entire amount of damages. *Silisky v Midland-Ross Corp,* 97 Mich

App 470; 296 NW2d 576 (1980), *lv den* 414 Mich 868 (1982).

Plaintiff next argues that the trial court should have first subtracted the settlement figure from the amount of damages rather than first subtracting the percentage due to comparative negligence. We agree. Public policy strongly favors settlements. *Empire Industries, Inc v Northern Assurance Co, Ltd,* 342 Mich 425; 70 NW2d 769 (1955); *Krevsky v Naccarato,* 56 Mich App 704; 224 NW2d 731 (1974), *lv den* 394 Mich 772 (1975). Subtracting the settlement figure first will encourage settlements. The nonsettling tortfeasor will soon see that he will not as likely escape tort liability for his own negligence by merely relying on the settling tortfeasor's contribution. In *DeMaris v Brown,* 27 Wash App 932, 945-946; 621 P2d 201, 208-209 (1980), the court took this position:

"The issue we decide is: Where the plaintiffs settle with one concurrent tort-feasor for $10,000, their damages are determined to be $50,000, and the jury finds the decedent 85 percent negligent, should the $10,000 settlement be deducted from the plaintiff's total damages of $50,000 or should the $10,000 be offset against the $7,500 that the nonsettling defendant is otherwise legally obligated to pay, *i.e.,* the plaintiffs' total damages less the percentage of negligence attributable to the decedent? We hold that the $10,000 settlement must first be deducted from the plaintiffs' total damages. The jury, without knowing of the settlement, found the total damages to equal $50,000. By reducing the $40,000 by the decedent's 85 percent contributory negligence, the comparative negligence rule is not affronted since the total percentage of contributory negligence remains the same. No one can know whether the tort-feasors' combined negligence might have been found to be 20 percent or less, in which case the State might not have owed anything, or more than 20 percent, in which case the State might have been

liable for any excess over $10,000. The settling tort-feasor most likely wished to wash his hands clean of the whole affair. Involving the settling tort-feasor in the suit has been avoided. The trial court should have awarded the plaintiffs a judgment of $6,000." (Footnote omitted.)

Therefore, the trial court in the present case should have awarded a judgment of $884,000 rather than $805,000.[2]

Plaintiff last argues that the trial court erred in awarding prejudgment interest from the date of the amended complaint against defendant rather than from the date of the original complaint against Earl Erhart. However, plaintiff did not raise this issue in his cross-appeal brief. Instead, he raised it in his reply brief in the cross-appeal. Because it does not reply in any way to defendant's brief on the cross-appeal, it has not been properly raised before this Court. If plaintiff wished to pursue this issue, he should have filed a motion with this Court to be granted leave to file a supplemental brief. Now, all he can do is ask this Court to grant leave to file a particular issue.

Affirmed as modified.

---

[2]

| | |
|---|---|
| $1,500,000 | damages |
| − 395,000 | settlement |
| $1,105,000 | |
| − 221,000 | 20% |
| $ 884,000 | judgment |