## George C. Evans v. The People.

*Omission of matter of form in indictment.*—Under the statute of 1855, relative to indictments (*Comp. L.* § 6047 *et seq.*), if an indictment or information contains direct and unequivocal averments of such facts—not being mere evidence—as lead immediately and of necessity to a single and inevitable conclusion, the omission to draw that conclusion will not vitiate the pleading.

An information for murder was in the full common law form of indictments, except that in the conclusion, where it was averred that the respondent "did kill and murder," the name of the person killed was omitted. The respondent was convicted of manslaughter, and it was held that, under the statute, the information was sufficient to sustain the conviction.

*Opinion of witnesses who are not experts.*—The cases considered in which the opinions of witnesses who are not experts may be given in evidence.

EVANS *v.* THE PEOPLE.

The case being such, that the exact nature, as well as the existence, of a particular epidemic in a certain locality was in controversy, a question was put to a witness (not an expert) as to the existence of the epidemic in that locality. The question was objected to, and the objection overruled. The witness, in reply, denied the existence of any sickness whatever in the locality. It was held that the difference between health and any sickness whatever could not be regarded as open only to medical science, and that the answer of the witness was not incompetent.

*Heard October 23rd. Decided November 10th.*

Error to Kent Circuit.

The plaintiff in error was informed against for murder, as follows:

"STATE OF MICHIGAN, KENT COUNTY, ss.· *The Circuit Court for the County of Kent.* E. G. D. Holden, prosecuting attorney for the county of Kent aforesaid, for and in behalf of The People of the State of Michigan, comes into said Court, in the March term thereof, A. D. 1863, and gives it here to understand and be informed, that George C. Evans, late of the city of Grand Rapids, of the county of Kent, on the eighteenth day of February, eighteen hundred and sixty-three, at the city of Grand Rapids, county aforesaid, in and upon one Coban Balch, in the peace of the People of the State aforesaid then and there being, feloniously, willfully, and of his malice aforethought, did make an assault, and that the said George C. Evans, then and there, feloniously, willfully, and of his malice aforethought, did strike, beat and kick the said Coban Balch, with his hands, fists and feet, in and upon the head, breast, sides and other parts of the body of him, the said Coban Balch, and did then and there feloniously, willfully, and of his malice aforethought, knock the said Coban Balch down, with great force and violence, then giving unto the said Coban Balch, then and there, as well by the beating, striking and kicking of him, the said Coban Balch, in manner and form aforesaid, as by knocking him, the said Coban Balch, down, as aforesaid, several mortal strokes, wounds and bruises, in and upon the head, breast, sides, and other parts of the body of

him, the said Coban Balch, of which said mortal strokes, wounds and bruises, he, the said Coban Balch, from the eighteenth day of February, A. D. 1863, until the twentieth day of February, 1863, did languish, and languishing, did live; on which said 20th day of February, in the year aforesaid, the said Coban Balch, at Grand Rapids, in the county and State aforesaid, of the several mortal strokes, wounds and bruises aforesaid, died; and so the Court is informed that George C. Evans, in manner and form aforesaid, feloniously, willfully, and of his malice aforethought, did kill and murder, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Michigan.

E. G. D. HOLDEN,
*Prosecuting Attorney for Kent County.*"

On this information, defendant was convicted of manslaughter, and sentenced to the State prison for two years and six months. The case was removed to this Court for review on writ of error and bill of exceptions. The questions raised by the exceptions sufficiently appear by the opinion.

*Ashley & Chipman, J. T. Holmes* and *G. V. N. Lothrop,* for plaintiff in error:

1. The information purports, in the main, to follow the common law forms for indictments for murder; yet in the conclusion it does not aver that the said George C. Evans did kill and murder the deceased.

Our statute of 1855, Compiled Laws, p. 1587, § 1, provides that, in all indictments for murder, it shall not be necessary to state the manner in which, and the means by which, the death of the deceased was caused; declaring it to be sufficient to charge that the defendant did willfully, and of his malice aforethought, kill and murder the *deceased.*

Since this statute became the law, a statement in an

indictment for murder, of the manner in which, or the means by which, the death of the deceased was caused, performs no office, and is surplusage.

The statute of 1859, p. 392, § 4, applies the statute above mentioned, relating to indictments, to informations.

At common law, after stating the manner in which, and the means by which, death was caused, it was necessary to charge that the accused did, with malice, &c., kill and murder the *deceased*. It was not sufficient to charge that the accused did kill and murder. See *Arch. Cr. Pl.* 301, 884; *Dias v. State*, 7 *Black.* 20; 1 *Chit. Cr. L.* 243.

Our statute of 1855 is a recognition of this rule, as applicable to common law indictments. It simply provides, in substance, that the concluding charge of a common law indictment shall be sufficient, and uses almost the identical language of the common law text writers upon that subject.

The court never, in criminal cases, take anything by intendment or implication:—*Long's Case*, 5 *Coke*; 4 *Bl. Com.* 310 *and note;* 1 *Chit. Cr. L.* 230.

2. Upon the question as to the prevalence of erysipelas. in the neighborhood of the residence of the deceased, physicians alone were competent to testify.

That was a question of fact, about which both parties offered proof. The question of the materiality of the proof to the issue, was not raised below, and is not in issue here. Clearly, persons skilled in treating diseases, are alone competent to testify upon that point:—*Greenl. Ev.* § 440, *note* 2.

*A. Williams, Attorney General,* for the People:

1. The information is not defective in the respect alleged—it clearly and distinctly charging the respondent with the crime of *murder*, thereby fully performing the office devolved upon a pleading of this kind.

It is one of the first principles of pleading, that there is only occasion to state the *facts*, for the purpose of inform-

EVANS v. THE PEOPLE.

ing the Court, whose duty it is to determine the *law* arising upon those facts, and of apprising the opposite party of what is meant to be proved, in order to give an opportunity to answer or traverse :—1 *Chit. Pl.* 213 ; 1 *Chit. Cr. L.* 172; *Steph. on Pl.* 135.

*This object* is fully consummated by this information. *A full description of the injury* complained of, embracing every fact necessary for the people to prove, is contained in the information; *the crime,* as the fruit of those facts, is positively and unmistakably charged upon the respondent; and thus he is positively *informed of that which he is to answer.*

True, it is said in the information, "and so the Court is informed that George C. Evans, in manner and form *aforesaid,* feloniously, willfully and of his malice aforethought, did kill and murder," omitting to add the name, "Coban Balch."

We submit, that the word "aforesaid," as used in this part of the information, is sufficient without a repetition of the name of the deceased—the respondent being thus as unmistakably informed without, as with it, as to what he is to meet upon trial. And further : The word "aforesaid" is sufficiently comprehensive in its scope and meaning, to therein repeat, by its use in this clause of the information, for all the purposes of pleading, all that is thus clearly intended to be referred to. This would as necessarily include *the object* of the acts, as the acts themselves, and their results; for the word, "aforesaid," in its intelligent, retrospective relation, clearly and certainly refers to that which has been said or recited before in the information and which makes up the entire body of the offense :— 1 *Chit. Pl.* 237-8-9; 1 *Chit. Cr. L.* 454, 172-3; 1 *Comst.* 180-4-5 ; 12 *Wend.* 425; 8 *Barb.* 550-1, 548; *Niles v. Rhodes,* 7 *Mich.* 374-8-9; *Whart. Cr. L.* § 1073 ; 1 *Arch. Cr. Pl. p.* 86 *and note* 1, *and p.* 118-2; 3 *Dyer,* 304; 3 *Park. Cr. R.* 15 *to* 21.

If the case made by the information be clear, nice distinctions ought not to be regarded: — 1 *Chit. Pl.* 238; 13 *Johns.* 482; 1 *Chit. Cr. L.* 172-3.

After verdict an expression must be construed in such a sense as will sustain the verdict: — 1 *Chit. Pl.* 238.

2. The respondent was convicted of manslaughter; and, as an information for manslaughter, it is sufficient — *no word of art being necessary to describe or charge this offense:* — *Whart. Cr. L.* §§ 399, 400; *Arch. Cr. Pl. p.* 91, 92, *and note* 1; *Dias v. The State,* 7 *Blackf.* 20; 3 *Dyer,* 304; 3 *Park. Cr. R.* 20.

3. The respondent's objection relates to *the form,* and not the substance of the information: — 5 *Wend.* 10; 12 *Wend.* 425; 3 *Denio,* 212; 8 *Barb.* 550-51, 548; *Whart. Cr. L.* § 427; 1 *Arch. Cr. Pl.* 118-2, *note* 2.

The objection being to *the form* of the information, *apparent upon its face,* it must have been taken by demurrer, or motion to quash the same, before the jury were sworn, and not after: — 2 *Comp. L.* § 6055; 10 *Mich.* 372, 395.

4. No injury could have resulted to the respondent from allowing Hendershot to answer the question put to him. The witness residing near the deceased in his life time, could testify whether or not there was sickness, but perhaps not, there being sickness, as to the type of it— a point, however, not conceded.

CAMPBELL J.:

Evans, the plaintiff in error, was convicted of manslaughter in killing one Coban Balch. Error is brought on two grounds: *First.* That the information is insufficient to sustain the conviction; and *Second.* That evidence was received which was inadmissible.

The error alleged in the information is, that while, in the concluding portion, it is averred that Evans did "kill and murder," it does not there show the name of the

person killed, and so contains no charge of the slaying of Balch. With this exception, the information is in the full form of a common law indictment for murder, and recites and alleges distinctly an assault, the infliction of mortal wounds, and that Balch died of those wounds; and in this part of the pleading the averments are full and technical as to time, place, manner, and all other matters essential. It is quite probable that if this information could only be sustained according to the rules of the common law, it would not come up to the certainty required. It is not to be denied that, in indictments for homicide, great strictness is required in alleging distinctly every necessary inference and conclusion. But our statute of 1855 declares, that "no indictment for any offense shall be held insufficient for want of the averment of any matter unnecessary to be proved," "nor for a want of a proper and formal conclusion: — 2 *Comp. L.* § 6054. We think that these, and other provisions in that statute concerning matters of form, require us to hold that, if an indictment or information contains direct and unequivocal averments of such facts (not being mere evidence) as lead immediately and of necessity to a single and inevitable conclusion, the omission to draw that conclusion expressly will not vitiate the pleading. The allegations in the case before us can not, by any possible construction, permit any inference except that Evans feloniously and maliciously killed Balch, at the time and in the manner specified. Had the jury found him guilty of "*murder,*" the question might arise which was referred to on the argument, whether that offense could be described without the technical word. In manslaughter, any unlawful and felonious killing constitutes the offense. We think the information sufficient to sustain the conviction.

The remaining ground of error alleged is, that one John Hendershot, not being shown to possess any special qualifications, was allowed to answer a question involving an

inquiry of medical science, having an important bearing upon the cause of Balch's death. It had been shown that he died of erysipelas, claimed by the prosecution to have resulted from the injuries inflicted by Evans. The defense had introduced medical witnesses, whose evidence tended to prove the existence of that disease in an epidemic form in Balch's neighborhood, previous to his visit to Grand Rapids, where he died two days after the assault upon him. Hendershot was called as a rebutting witness, and was asked, under objection, whether there was "any case of erysipelas about the neighborhood of the residence of the deceased, before his coming to Grand Rapids, in February last;" the witness answered, "No, sir; neither before nor since; no sickness within five or six miles of Coban Balch's residence during the month of February, nor until after that time."

There can be no doubt of the importance of these various inquiries, inasmuch as they were aimed at explaining the causes of the death of Balch, and showing how far Evans was responsible for it. It becomes essential, therefore, to consider whether this question was admissible under the circumstances, and also how far the form of the answer may affect the legality of its reception.

If the question was improper, it is because it is supposed to involve obtaining an opinion which no one has a right to give in evidence without an especial knowledge of diseases in general, or of the particular disease named, not supposed to be possessed except by those whose study or attention has been turned in that direction.

It is not always easy to determine the propriety of receiving or rejecting testimony concerning matters involving, apparently, to a greater or less extent, medical or other scientific investigation. There are many cases where it is difficult to determine whether the facts to be examined are to be considered beyond the range of ordinary intelligence. And the decisions are by no means clear or

satisfactory upon the distinctions. The principles on which the authorities rest are more consistent than the attempts to apply them.

The primary rule, concerning all evidence, is, that personal knowledge of such facts as a court or jury may be called upon to consider, should be required of all witnesses, where it is attainable. It is also an elementary rule that, where the court or jury can make their own deductions, they shall not be made by those testifying. In all cases, therefore, where it is possible to inform the jury fully enough to enable them to dispense with the opinions or deductions of witnesses from things noticed by themselves, or described by others, such opinions or deductions should not usually be received. But experience has shown that many cases exist, in which it is impossible, by any description, however graphic, to explain things so as to enable any one but the witness himself to see or comprehend them, as they would have been seen or comprehended could the jury have occupied his position of observation. In such cases, the witness must give his own impressions and conclusions, or his narrative is useless; adding, however, as full explanations as the nature of the case will admit, so that his capacity and truthfulness may be tested as far as practicable. Examples of this kind frequently occur, when it becomes necessary to inquire into mental condition and disposition, into the existence of passion or emotion, attention or inattention, vigor or weakness, affection or aversion, or any other matter in which we usually form our opinions without stopping to analyse the reasons for them, or notice their elements. Similar instances occur where witnesses attempt to describe natural phenomena, as degrees of light and darkness, the measurement of distances by the eye, changes of heat and cold, and the like. The principle which allows persons who understand matters of science or skill to give their opinions and deductions from facts exhibited or described to them, rests upon the same foundation. In all these cases, the

witness is allowed to testify to a result, because, without such evidence, the jury can not be supposed able to arrive at a knowledge of it, and therefore such aid is indispensible. And it also follows, that no witness can be permitted to offer such testimony, unless he appears to be qualified, in some degree, at least, to furnish the means of aiding the jury in arriving at a true result. The greatest difficulty encountered in determining questions of competency of testimony, on subjects connected more or less with medical science, is in ascertaining how far it is safe to suppose unprofessional observers are able to form a reliable judgment. There are some simple disorders, which all persons are familiar with. Others require the very highest degree of medical skill to distinguish them from disorders having some resembling appearances or symptoms. In some cases, too, although inquiries arise concerning the existence of health or disease, it does not become important to have accurate information as to the precise character of such disorders as may exist. In the view of evidence now entertained by the best authorities, it is settled that a jury should be allowed to have placed before them all the means of knowledge which can be had without involving the danger of leading them to form conclusions not based on solid truth, and not reliable as reasonably certain. If a witness is competent to form an opinion which the jury could not, or which an ordinary witness could not, it would be absurd to reject his aid. But, on the other hand, a scientific witness, when he testifies to matters within the comprehension of ordinary witnesses, stands on the same footing with them as to all such testimony, and as to those matters can only give his opinions where any other observer might.

Thus, when it was held by some authorities that, upon questions touching the mental capacity of a particular person, only physicians and subscribing witnesses could give their opinion, the inquiry was not made one of science

merely, and the scientific expert was put on the same footing, on questions not purely medical, with ordinary witnesses having no scientific knowledge, and whose powers of observation were those possessed by any one in like circumstances; and the recognition of this equality has led to the modern sensible doctrine, that similar opinions are receivable from all who have, by personal observation, had means of forming a judgment concerning the condition of the party. The value of any such opinion depends, like all other testimony, on the honesty and sagacity of the witness, and on his means of observing and judging.

Such opinions being constantly formed and acted upon by all men in their daily intercourse, are among the most familiar means of safety in business transactions. But there may be, in addition to appearances which all intelligent men understand, peculiar symptoms and conditions understood only by medical men or other experts; and as to these peculiarities, the testimony of such experts becomes admissible beyond that of others.

What is thus true of mental capacity may become equally true in regard to other matters involving some questions of skill. Circumstances may make whole communities familiar with diseases not generally known elsewhere, and reasonably competent to manage ordinary cases of such diseases, and to recognize their symptoms. Such is often the case from necessity in new countries; and the same necessity leads to a more general knowledge of the extent to which a neighborhood has suffered from any prevailing sickness than is usual in populous towns. And it often happens that some persons having no general skill become very familiar with particular subjects.

It would be very unwise to exclude such evidence, merely because the range of the witness's knowledge is limited. There are as many grades of knowledge and ignorance in the professions as out of them. The only safe rule in any of these cases is, to ascertain the extent

of the witness's qualifications, and, within their range, to permit him to speak. Cross - examination, and the testimony of others, will here, as in all other cases, furnish the best means of testing his value.

The circumstances of the case, therefore, must be looked at to determine the admissibility, not only of the question put to Hendershot, but also of his answer. As he was not examined concerning his knowledge of erysipelas, or of diseases generally, he could not be asked such a question, if the issue materially required from the witness any such knowledge. The inquiry before the jury was whether the erysipelas, of which Balch died, was dependent on a wound, or was wholly or in part derived from other causes. It was attributed by the defense to his previous exposure to an epidemic.

The exact nature, as well as the existence of such epidemic was thus directly in controversy. This question, therefore, could not properly be put to any one not having some knowledge of the disease; and, as the record stands, was erroneously allowed.

But Hendershot's answer, denying the existence of any disease whatever in that vicinity, stands on a different footing. The difference between health and any sickness whatever can hardly be regarded as open only to medical knowledge; and his contradiction of the medical testimony is a contradiction of common facts, and not of science. The value of such a sweeping assertion is not to be determined in this Court.

The testimony was not incompetent. There was no error in the proceedings, and the judgment must be affirmed.

The other Justices concurred.