PEOPLE v EATON

Docket No. 47105. Submitted November 9, 1981, at Detroit.—Decided March 18, 1982. Leave to appeal applied for.

Dondi E. Eaton was convicted by a jury in Wayne Circuit Court of three counts of first-degree criminal sexual conduct and one count of armed robbery and was sentenced to four terms of life imprisonment, Harry J. Dingeman, J. Defendant's application for delayed appeal was granted. *Held:*

1. The juvenile court's decision to waive jurisdiction to the circuit court did not constitute an abuse of discretion.

2. Defendant was not deprived of the effective assistance of counsel because of his trial counsel's failure to appeal the juvenile court's waiver of jurisdiction to the circuit court.

3. Remarks made by the prosecutor during his closing argument, although bearing a close resemblance to an impermissible "civic duty" argument and in one instance being erroneous, were not so prejudicial as to deprive defendant of a fair trial, especially in light of the overwhelming evidence of defendant's guilt and the fact that no objection to any of the remarks was made at trial.

4. The display of bloodstained garments and the admission of scientific testimony regarding bloodstains did not deprive defendant of a fair trial.

5. The trial court erred by permitting the victim to testify that she had previously identified defendant as her assailant in the course of a photographic identification procedure because the photographic procedure was improperly conducted. However, in view of the overwhelming evidence of defendant's guilt as well as his failure to object at trial, the erroneous admission of the prior identification testimony was harmless beyond a

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 260.
[2] 29 Am Jur 2d, Evidence § 370.
  30 Am Jur 2d, Evidence § 1104.
  Admissibility, weight, and sufficiency of blood-grouping tests in criminal cases. 2 ALR4th 500.
[3] 21A Am Jur 2d, Criminal Law §§ 788, 790, 974.

reasonable doubt. In addition, there was an independent basis for the victim's in-court identification of defendant.

6. Defendant's contention that a police officer's testimony about the circumstances under which the photo show-up was conducted impermissibly suggested to the jury that the photographs were "mug shots", thus depriving him of a fair trial, is without merit. The vague reference to a possible criminal record was not inherently prejudicial nor was it deliberately injected into the proceedings.

7. A police officer's testimony which suggested that defendant had committed a second robbery on the night he was apprehended did not deprive defendant of a fair trial.

8. Defendant was not deprived of due process by the trial court's basing defendant's sentence upon what defendant contends is an incomplete presentence report. The presentence report was prepared in compliance with the applicable statute and the rules promulgated by the Department of Corrections, and defendant failed to object to the presentence report at trial.

Affirmed.

1. PROSECUTING ATTORNEYS — EVIDENCE — INFERENCES — PROSECUTORIAL COMMENT.

The general rule is that a prosecutor may comment on the evidence introduced at trial and may suggest inferences from that evidence.

2. EVIDENCE — CRIMINAL LAW — BLOOD TESTS.

Admission of blood test analysis results which include a defendant in a class of possible defendants should be permitted in accordance with the rules for the admission of other physical evidence.

3. CRIMINAL LAW — WITNESSES — IDENTIFICATION — PHOTOGRAPHS.

Counsel must be present at a photographic identification of an accused who is in custody, or where the defendant, although not in custody, is the focus of investigation and the purpose of the identification is to build a case against the defendant by eliciting identification evidence, not to extinguish a case against an innocent bystander.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendant on appeal.

Before: R. M. Maher, P.J., and D. F. Walsh and D. C. Riley, JJ.

Per Curiam. After a jury trial in Wayne County Circuit Court, defendant was found guilty as charged of three counts of first-degree criminal sexual conduct and one count of armed robbery. MCL 750.520b; MSA 28.788(2), MCL 750.529; MSA 28.797. On September 12, 1977, he was sentenced to four life terms. On August 31, 1979, defendant filed an application for delayed appeal, which was granted on December 30, 1980.

On December 13, 1975, at 1 a.m., the complainant, who was driving home, decided to take a short-cut through an alley. As she proceeded through the alley, another car blocked her passage. Defendant got out of the car, walked over to the complainant's vehicle, held a gun to her head, and ordered her to open the door of her car. He then drove several blocks away to another alley where, over a period of an hour, he forced her to engage in three criminal sexual acts involving penetration. After allowing the complainant to leave the vehicle (which contained her purse), defendant drove away.

A short time later, two police officers observed defendant sitting in the complainant's vehicle, going through her purse and discarding various items out the window. Defendant became aware of the presence of the police and drove off at a high rate of speed. A high-speed chase through residential areas ended in another alley when defendant totalled the complainant's car; the chase, however, continued on foot, culminating in defendant's ar-

rest. In the course of their pursuit, the police managed to shoot defendant in the arm.

Defendant, evidently quite precocious, was 16 years old when this incident occurred.

On appeal, defendant raises eight allegations of error, which we shall dispose of in order.

Defendant initially contends that the juvenile court's decision to waive jurisdiction to the circuit court constituted an abuse of discretion. We disagree because we have concluded that the juvenile court's findings were based upon substantial evidence and upon thorough investigation. See *People v Schumacher,* 75 Mich App 505; 256 NW2d 39 (1977). We perceive no good reason to disturb the juvenile court's determination that the security of the public, as well as defendant's welfare, would be best served by treatment as an adult.

Defendant next contends that he was deprived of the effective assistance of counsel on the ground that his trial counsel failed to appeal the juvenile court's waiver of jurisdiction to the circuit court. Since we have determined that the juvenile court's waiver of jurisdiction was not improper, defendant was not denied the effective assistance of counsel on this ground. See *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

Defendant also contends that three remarks by the prosecutor deprived him of a fair trial. We initially note that no objection was interposed to any of these remarks at trial.

Mrs. Hamet testified that the passage of her car in the alley was blocked by a "cream colored Ford-type car". Defendant subsequently produced alibi witness Louis Green, who testified that he was with the defendant on the evening of December 13, 1975. He also testified that he, Green, had "a Ford.

It was a cream, like, it was a brownish color." The prosecutor made the following statement in the course of his closing argument:

"I think that inference that we can draw, ladies and gentlemen, is that Mr. Louis Green was indeed with Dondi Eaton a portion of that evening. I would submit that Louis Green was in that car and it was his car that cut off Mrs. Hamet in that alley and that Mr. Green is here on an IOU for not getting caught and what is ironic and what is tragic is that fact that this point and probably from now on we won't be able to come up with any evidence to hold that other individual responsible."

As a general rule, the prosecutor may comment on the evidence and suggest inferences from that evidence. *People v Terry,* 86 Mich App 64, 68; 272 NW2d 198 (1978). This commentary on the evidence was not improper. An attack on the credibility of defendant's alibi witness was crucial to the prosecution's case.

The prosecutor also made the following statement during his closing argument:

"If I might summarize briefly for you, I think the evidence that the people have presented in this case is probably best described as every woman's nightmare. I would think it would be the nightmare of every woman in this county, probably everyone in this state to be driving home alone, late at night, to get close to home and to be blocked in your car and to be forced at gunpoint to robbery and sexual attack.

"I would submit to you that there were and probably still are many scars for Mrs. Hamet and hopefully time will take care of many of them, but many may not be taken care of. There is no way we can eradicate or erase in any way the injuries both physical and probably more importantly psychological, but I would submit to you one thing that can be done and I think the law

demands that it be done in this case, to hold the man responsible for those actions.

"The evidence in this case indicates beyond any reasonable doubt that Mr. Eaton who sits before you today is in fact guilty of the four offenses charged. I ask you on behalf of Mrs. Hamet, on behalf of all the people of Wayne County, to hold Mr. Eaton accountable for what he did back on December 13, 1975."

Defendant accurately points out that certain aspects of this statement bear a close resemblance to an impermissible "civic duty" argument. See *People v Wright (On Remand),* 99 Mich App 801; 298 NW2d 857 (1980), *lv den* 410 Mich 854 (1980). However, absent objection—and in light of the overwhelming evidence of defendant's guilt—we are unwilling to conclude that these remarks were so prejudicial as to deprive defendant of a fair trial.

During his closing argument, the prosecutor also stated, erroneously, that "sperm was found in [defendant's] undershorts". We believe that this statement, made in good faith, did not contribute to a possible miscarriage of justice; hence, absent objection at trial, we are unwilling to reverse on this basis. See *People v Wheat,* 55 Mich App 559, 565; 223 NW2d 73 (1974).

Defendant next contends that the display of bloodstained garments and the admission of scientific testimony regarding bloodstains deprived him of a fair trial. We disagree. The clothing was relevant and admissible for visual or scientific identification. Moreover, defendant failed to object to its admission.

Although one panel of this Court has concluded that scientific blood-type evidence is inadmissible, see *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669, *lv den* 407 Mich 933 (1979), *cf. People v*

*White,* 102 Mich App 156, 162-167; 301 NW2d 837 (1980) (M. J. KELLY, J., *concurring),* we believe that the better view is reflected in *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), *vacated on other grounds* 410 Mich 865; 301 NW2d 775 (1980), *People v Collier,* 105 Mich App 46; 306 NW2d 387 (1981), and *People v Young,* 106 Mich App 323; 308 NW2d 194 (1981), which held such evidence admissible.

Defendant also contends that the trial court erred by permitting the complainant to testify that she had previously identified defendant as her assailant in the course of a photographic identification procedure. The record does not show that defendant's counsel was present at a "photo show-up" conducted by the police.

The prosecution claims that the photo show-up was not improper inasmuch as defendant was not in custody at the time. See *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974). We cannot agree. There was probable cause to arrest defendant prior to the show-up, and the purpose of the show-up was "to build a case against the defendant by eliciting identification evidence, not to extinguish a case against an innocent bystander". *People v Kachar,* 400 Mich 78, 89; 252 NW2d 807 (1977). Hence, the photo show-up was improper.

We note, however, that defendant was caught red-handed in the complainant's car, going through her purse, and was positively identified by the complainant, who had ample opportunity to observe him. In view of the overwhelming evidence of defendant's guilt, as well as his failure to object at trial, we conclude that the erroneous admission of the prior identification testimony was harmless beyond a reasonable doubt. See *People v Till,* 406 Mich 641, 645; 281 NW2d 297 (1979), *reh den* 407

Mich 1155 (1979), *People v Stewart,* 107 Mich App 458; 309 NW2d 564 (1981).

After applying the factors enunciated in *Kachar* to the case at bar, we have also concluded that there was an independent basis for the complainant's in-court identification of defendant. The complainant had an opportunity to observe defendant for over an hour. Moreover, she had given a fairly accurate description of defendant to the police, had never failed to identify defendant as her assailant, and and never identified another person as the assailant. See *Kachar, supra,* 95-96.

Defendant next contends that a police officer's testimony about the circumstances under which the photo show-up was conducted impermissibly suggested to the jury that the photographs were "mug shots", and thus deprived him of a fair trial. This argument is without merit.

We initially observe that the term "mug shot" was never used at trial, that the photographs were not accepted into evidence, and that no objection was made to this testimony at trial. The police officer merely testified that several of the photographs (but not defendant's) "had full face views and side views", and that he had placed the photographs on the blotter in such a way that "the full face views were showing and all numbers were concealed". We find that this vague reference to a possible criminal record was not inherently prejudicial; nor was it deliberately injected into the proceedings. See *People v Hoerl,* 88 Mich App 693, 703; 278 NW2d 721 (1979).

Defendant next contends that a police officer's testimony which suggested that defendant had committed a second robbery on the night he was apprehended deprived him of a fair trial. We disagree. A police officer testified on direct exami-

nation that he and his partner "had received information from the Dearborn Police Department by our radio giving us information as to the car and that the subject had completed a robbery and rape in Dearborn. So, we were cruising the area."

Defense counsel elicited the following testimony on cross-examination of the police officer:

"*Q.* Did you notice that this was the Mercury you were looking for that you heard from the Dearborn Police Department about?

"*A.* We heard of another holdup on a street which was approximately six blocks away that gave the same description, the same man. The *[sic]* was over the in *[sic]* area of Burnett. The same defendant committed another robbery.

"*Q.* Just a moment. There was another robbery, you do not know it was the same defendant.

"*A.* It was the same description, the same license plate number and the same description of the person that was involved."

This testimony, elicited by defense counsel, was relevant to show the circumstances surrounding defendant's arrest. Moreover, the testimony was fairly responsive to the questions posed by defense counsel and was not volunteered by the witness. See *People v McCartney,* 46 Mich App 691; 208 NW2d 547 (1973). We cannot conclude that the admission of this testimony deprived defendant of a fair trial.

Finally, defendant contends that the sentence he received was based upon an incomplete presentence report, and that this amounted to a denial of due process. We note, once again, that defendant interposed no objection to the presentence report at trial. See *People v Herndon,* 98 Mich App 668, 674; 296 NW2d 333 (1980). Defendant contends for the first time on appeal that the presentence

report should have included the recommendations of the expert witnesses who testified at his juvenile waiver hearing. We believe that the presentence report was prepared in compliance with MCL 771.14; MSA 28.1144 and the rules promulgated by the Department of Corrections; consequently we do not choose to vacate defendant's sentence.

After a careful examination of the record and briefs, we are convinced that defendant received a fair trial.

Affirmed.