PEOPLE v ADAMS

Docket No. 58066. Submitted November 17, 1982, at Detroit.—Decided
    February 8, 1983. Leave to appeal applied for.

Mack Adams was convicted of criminal sexual conduct in the first
    degree following a jury trial in Recorder's Court of Detroit,
    Donald L. Hobson, J. During the cross-examination of defen-
    dant, the prosecutor asked a series of questions, over the
    objection of defense counsel, relating to numerous collateral
    matters which suggested that defendant moved certain business
    assets to avoid seizure by the IRS, had failed to pay back taxes,
    used a promise to buy his business property as a tool to delay
    paying rent and then breached the promise to buy the prop-
    erty, failed to pay the rent on the property, broke into a
    building adjacent to the building in which his business was
    located and attached the gas line to his building for the
    purpose of avoiding the payment of a gas bill, had broken into
    his old place of business, had brought criminal charges against
    another for his own personal benefit, and had refused to return
    certain equipment which he had borrowed. Defendant denied
    all these activities. The prosecutor was also permitted to recall,
    in violation of a sequestration order and over the objection of
    defense counsel, a witness for the purpose of rebuttal. Defen-
    dant appeals. *Held:*

    1. It was an abuse of discretion mandating reversal to permit
    the prosecutor to engage in systematic imputation of bad acts
    by the defendant on collateral matters, none of which were
    admitted by defendant and for which the prosecutor presented
    no foundation, since, even if the questions had been answered
    in the affirmative, there is a question what relevance the
    subject matter of the question would have to the establishment
    of defendant's character for truthfulness or untruthfulness.

    2. Since the rebuttal testimony was relevant and material, it

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 327.
    81 Am Jur 2d, Witnesses § 592.
[2] 75 Am Jur 2d, Trial § 67.
    Effect of witness' violation of order of exclusion. 14 ALR3d 16.
[3] 29 Am Jur 2d, Evidence §§ 250, 269.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 4.

cannot be said that the trial court abused its discretion by permitting such testimony even though the calling of the witness who gave the testimony was in violation of the sequestration order.

3. It was error to permit the prosecutor to inquire of the rebuttal witness whether defendant's business partner had said anything as to his belief in the charges against the defendant, since the question of guilt is for the jury alone and is not the proper subject of inquiry of witnesses. While there was an error, there was no manifest injustice which would require reversal on this issue.

Reversed.

1. WITNESSES — CROSS-EXAMINATION — CRIMINAL LAW — IMPEACHMENT — COLLATERAL MATTERS.

It is an abuse of discretion for a trial court to permit the prosecution in its cross-examination of a criminal defendant for impeachment purposes to ask a series of questions on collateral matters relating to questionable activities by the defendant but which did not result in a conviction and all of which the defendant denied where, even if admitted, the answers would have little bearing on the question of the defendant's character for truthfulness or untruthfulness (MRE 608).

2. WITNESSES — SEQUESTRATION.

A trial court has discretion to allow or exclude the testimony of a witness who has violated a sequestration order.

3. EVIDENCE — REBUTTAL TESTIMONY — WITNESSES.

Rebuttal testimony to impeach a witness is admissible when it is limited to the refutation of relevant and material evidence bearing on an issue properly raised in the case.

4. WITNESSES — CRIMINAL LAW — EVIDENCE — OPINION ON GUILT.

A witness may not express an opinion concerning the guilt or innocence of a defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *John A. Scavone,* Assistant Prosecuting Attorney, for the people.

*W. Otis Culpepper,* for defendant.

Before: M. F. CAVANAGH, P.J., and R. B. BURNS and CYNAR, JJ.

CYNAR, J. On March 23, 1981, defendant was convicted by a jury of criminal sexual conduct in the first degree, *i.e.,* sexual penetration of a female at least 13 but less than 16 years of age and a member of the same household. MCL 750.520b(1)(b); MSA 28.788(2)(1)(b). On March 31, 1981, defendant was sentenced to five years probation and assessed costs of $75 per year. Defendant appeals as of right.

The prosecutor, in the course of cross-examining defendant, made inquiry into defendant's past business ventures, how defendant made a living, and why a place of business was closed. Defense counsel's objections were overruled. Over further objection, the prosecutor was permitted to ask defendant the following questions and received the following answers:

"*Q.* Now, isn't it true that when you closed that place of business in 1977, that you owed the IRS over a thousand dollars and that they were about to seize the assets and that they were going to padlock that business? And before that could happen, you moved everything out in the middle of the night?

\*   \*   \*

"*The Witness:* No, it's not true.

\*   \*   \*

"*Mr. Kriazman [defense counsel]:* What was the answer? I didn't hear it.

"*The Witness:* No.

"*Mr. Lehto [prosecutor]:* I didn't finish the question.

"*The Court:* He didn't finish the question.

"*Q. (by Mr. Lehto):* Isn't it true that the reason you closed that place of business was because the IRS was about to seize the assets? And you had removed the assets from the location?

"*A.* No, sir."

Over further objections, the prosecutor continued the examination:

"*Q. (by Mr. Lehto):* And isn't it true, Mr. Adams, that to this date, you have not paid those back taxes.
"*A.* No.

\* \* \*

"*Q.* And isn't it true that before you moved out of that place in '77 that you promised her that you were going to buy the building?

\* \* \*

"*The Witness:* No.

\* \* \*

"*Q. (by Mr. Lehto):* And isn't it true that you used that promise as a tool to delay paying your rent?

\* \* \*

"*The Witness:* No.
"*Q. (by Mr. Lehto):* And isn't it true that to this date, you still owe her three thousand six hundred dollars in rent?
"*A.* No.
"*Q.* And isn't it true that you are a few months behind in the rent in your present location?

\* \* \*

"*The Witness:* No."

Over further objections, the prosecutor asked defendant whether he had broken into the building adjacent to his place of business and attached the gas line to his building to avoid paying a gas bill, whether he had broken into his old place of business and charged a friend's son with the crime in order to free the friend to marry him, and whether he had refused to return stereo equipment which he had borrowed from Deborah Hayden.

Defendant testified that he did not have sexual relations with the complainant and that the complainant was being trained to be a secretary. Defendant also testified that he never had a lock on his office door. James White, who was defendant's friend and business partner, testified during cross-examination that he never told the complainant's sister after defendant's arrest that defendant had been alone many times in his office with the complainant behind a locked door. White also testified that defendant never had a lock on the door to his office.

After the defense rested, the prosecutor requested permission to call a rebuttal witness. Defense counsel objected, noting that the prosecutor intended to recall the complainant's sister, and argued that her testimony would violate the order of sequestration. The prosecutor stated that he did not know he was going to recall the witness until he heard all the testimony and that he just wanted her to testify about what had happened when defendant's partner came to the sister's office the day after defendant was arrested. The trial judge stated that he would allow the testimony for that limited purpose.

The complainant's sister testified on rebuttal that defendant's partner came to see her the day after defendant was arrested and told her that he remembered times when defendant had the complainant locked in his office.

The prosecutor also asked the rebuttal witness: "And did he say anything about whether or not he believed the charges?" Defense counsel objected, and the prosecutor argued that the partner's belief in defendant's guilt was part of the statement that the prosecutor asked him about on cross-examination. The trial court ruled to allow the statement

for the limited purpose that it was made but not as to its truthfulness. The witness then testified: "He said it was hard to believe. And he could think of different incidents."

Defendant contends the prosecutor's cross-examination was a wholesale and purposeful violation of the well-settled rule that the accused may not be impeached by prior misconduct not amounting to a conviction. *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973).

The prosecutor laments that the defendant was not questioned about prior arrests or charges which did not result in convictions, defendant was merely asked whether it was true that he engaged in the conduct specified. In each instance, defendant denied doing the act questioned. It is argued that such cross-examination was proper under the Michigan Rules of Evidence, 608(b), because it was limited to questions that were probative of the witness's character for truthfulness or untruthfulness and, thus, the admission of the cross-examination testimony was subject to the discretion of the trial court.

MRE 608 provides:

"Evidence of Character and Conduct of Witness.

"(a) Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence of reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

"(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion

of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

Even with the benefit of the broad but elusive phraseology of *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), concerning abuse of discretion, the prosecution is not afforded a saving grace from reversal for impeaching defendant on cross-examination with alleged prior bad acts. "Evidence" is the key word in MRE 608. In this case, the record is barren of any foundation for the questions asked on cross-examination which are alleged to have a bearing on defendant's character. It would appear from the record that there was no hearing in the absence of the jury where the prosecutor attempted to show a foundation for his questions. The evidence, if it could be construed as "evidence", consisted solely of the questions by the prosecutor. This is not sufficient. The situation may be comparable to a cross-examiner asking a witness when he last beat his wife, when in fact the witness had never beaten his wife. To expect absolute absence of error in a trial is not realistic. In this case, however, not one or several but a series of questions were asked concerning collateral matters premised on the contention that they had a bearing on the truthfulness of defendant. There is a question, even if defendant had answered some of the questions in the affirmative,

whether they would have any bearing on the character of the witness.

The only issue for the jury's determination was whether they believed defendant committed the charged offense. There were no eyewitnesses to the commission of the alleged offense. The trial judge informed the jury that the questions asked by the prosecutor were not to be considered as evidence. Based on the record, this was not sufficient to overcome the error in the court's ruling on the issue in this case. We find the trial court abused its discretion.

Defendant also argues that the trial judge abused his discretion by allowing the complainant's sister to testify as a rebuttal witness in violation of a sequestration order, that the testimony was improper testimony, and that the rebuttal testimony was improper because it amounted to an attempt to show the jury that defendant's business partner believed that defendant was guilty.

Whether to exclude the testimony of a witness who has violated a sequestration order is within the trial judge's discretion. *People v Cyr,* 113 Mich App 213, 231; 317 NW2d 857 (1982), *lv den* 414 Mich 888 (1982); *People v Boose,* 109 Mich App 455, 474-475; 311 NW2d 390 (1981). There was no abuse of discretion in permitting rebuttal testimony in this case.

The rebuttal testimony was relevant and material to the refutation of evidence bearing on an issue properly raised in the case. Thus, the rebuttal testimony was admissible. See *People v De-Leon,* 103 Mich App 225, 228-229; 303 NW2d 447 (1981), *lv den* 412 Mich 935 (1982); *People v Bennett,* 393 Mich 445, 448-449; 224 NW2d 840 (1975).

Defendant additionally argues that part of the

rebuttal testimony was incompetent because it was an attempt to show the jury that defendant's partner believed the charge against defendant.

In *People v Parks,* 57 Mich App 738, 750; 226 NW2d 710 (1975), this Court recognized that a witness may not give the jury an opinion as to the credibility of another witness or the guilt or innocence of the accused. The credibility of witnesses and the guilt or innocence of the accused are solely within the province of the jury. *People v Walker,* 40 Mich App 142, 145; 198 NW2d 449 (1972), relying on *Evans v People,* 12 Mich 27 (1863).

In *People v Row,* 135 Mich 505, 507; 98 NW 13 (1904), although defense counsel failed to object when the prosecutor had established the witness's belief in the complainant's story, the Supreme Court held:

"This, however, did not make the testimony competent, and, when the attention of the court was called to it, he should have so held, and instructed the jury accordingly."

In this case, when the prosecutor asked the rebuttal witness if defendant's partner said anything as to whether he believed the charges, defense counsel objected. The objection should have been sustained. The first part of the answer appears favorable to defendant, and the last part of the answer appears to relate to other incidents. A question remains on what effect, if any, the answer may have had on the jury's determination. We do not believe this error, based on the record herein, constitutes manifest injustice requiring reversal.

Reversed.