PEOPLE v BOLES

Docket No. 63736. Submitted May 24, 1983, at Detroit.—Decided
    August 2, 1983.

Defendant, Anthony Boles, was charged with second-degree mur-
    der and, following a jury trial in Recorder's Court of Detroit,
    Warfield Moore, Jr., J., was convicted of manslaughter. The
    charges arose out of a death by multiple stab wounds. Defen-
    dant admitted stabbing the deceased but asserted that it was
    done in self-defense. At trial, over a defense objection, the
    prosecution was permitted to call an unendorsed witness who
    had violated a blanket sequestration order to give rebuttal
    testimony relative to certain testimony of a specific prior act of
    the deceased elicited by defense counsel to show the deceased's
    reputation for violence. Defense counsel requested that the jury
    be instructed as to assault with intent to do great bodily harm
    less than murder. The trial court refused to so instruct the
    jury. Defendant appeals. *Held:*

    1. The trial court did not abuse its discretion in allowing the
    prosecution to call as a rebuttal witness the person who had
    not abided by the sequestration order. Clearly the prosecution
    had not anticipated the calling of that witness and did so only
    to rebut certain testimony elicited by defense counsel relative
    to a specific act of violence by the deceased. Since the testimony
    elicited by defense counsel should not have been admitted
    because there was an absence of a showing of knowledge by the
    defendant of the specific act testified to, the trial court in an
    exercise of its discretion properly admitted the rebuttal testi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 73.
    Effect of witness' violation of order of exclusion. 14 ALR3d 16.
[2] 40 Am Jur 2d, Homicide § 157.
[3] 21A Am Jur 2d, Criminal Law § 985.
    Modern status of rules and standards in state courts as to adequacy
        of defense counsel's representation of criminal client. 2 ALR4th
        27.
[4] 5 Am Jur 2d, Appeal and Error §§ 545, 624, 778.
    75 Am Jur 2d, Trial § 226.
[5] 75 Am Jur 2d, Trial §§ 876, 878, 879, 880, 882.

mony even in the absence of compliance with the sequestration order.

2. The hearing impairment of defense counsel does not in and of itself establish ineffective assistance of counsel. The record fails to establish that defendant was denied effective assistance of counsel.

3. Even if the remarks of the prosecutor during closing arguments were improper, reversal is not mandated in light of the overwhelming nature of the evidence against defendant and the lack of a specific objection to the prosecutor's remarks on the basis that the jury should convict for reasons apart from the evidence itself.

4. The trial court properly refused to instruct as to assault with intent to do great bodily harm less than murder, since the evidence did not support the charge. It was uncontroverted that death resulted from wounds inflicted on the deceased. Under such circumstances, and in view of the defense of self-defense the proofs would not support conviction on the assault charge.

Affirmed.

1. WITNESSES — SEQUESTRATION.

A trial court has discretion to allow or exclude the testimony of a witness who has violated a sequestration order; it is not an abuse of discretion to allow the testimony of a witness who violated a sequestration order where the testimony was used in rebuttal, the prosecution did not anticipate calling the witness and the testimony went only to the rebuttal of testimony which should not have been admitted into evidence in the first place.

2. EVIDENCE — HOMICIDE — SELF-DEFENSE — REPUTATION OF VICTIM.

An accused claiming self-defense in a homicide case may offer proof that the alleged victim had a reputation as a violent person, including proof of specific acts of violence by the alleged victim; however, such proof of specific acts of violence may be admitted into evidence only upon a showing that the accused was aware of those incidents at the time of the homicide (MRE 404[a][2], 405[b]).

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL — HEARING IMPAIR-
MENT.

A hearing impairment of defense counsel is not, by itself, suffi-
cient to constitute ineffective assistance of counsel; ineffective assistance of counsel by reason of a hearing impairment is not shown where the record shows that counsel fully participated in the defense of his client and made no outcome-determinative mistakes at trial and fails to show that the impairment re-

sulted in any event which would have changed the jury's verdict.

4. Prosecuting Attorneys — Trial — Closing Arguments — Prosecutorial Misconduct.

It is error for a prosecutor to suggest that a jury should convict on the basis of civic duty or suggest that the jury should decide the case on other than the evidence itself; reversal is not mandated on the basis of prosecutorial remarks suggesting that the jury should convict out of a sense of civic duty where the evidence is overwhelming and no specific objection on that basis was made by defense counsel at trial.

5. Homicide — Second-Degree Murder — Lesser Included Offenses — Jury Instructions.

Assault with intent to commit great bodily harm less than murder is a cognate lesser included offense of second-degree murder and a jury instruction on that lesser included offense must be given if requested and if supported by the evidence; it is not error to refuse to give an instruction on assault with intent to do great bodily harm less than murder in a trial for second-degree murder where it is uncontroverted that the victim died from multiple stab wounds inflicted by the defendant and the defense was self-defense.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Melissa Z. El,* for defendant.

Before: Cynar, P.J., and J. H. Gillis and Wahls, JJ.

Per Curiam. Defendant was convicted by a jury of manslaughter, MCL 750.321; MSA 28.553. He was sentenced to 10 to 15 years imprisonment and appeals as of right.

This prosecution arose from the fatal stabbing of Marvin Davis, which occurred during the evening hours of August 5, 1981, in an alley adjacent to

6919 Frederick in Detroit, Michigan. Tanitha Pierce, defendant's girlfriend and the mother of his child, became embroiled in an argument with her mother, Emma White, concerning the quality of care rendered by Tanitha's babysitter. The deceased, who was Emma White's boyfriend, intervened in the argument which touched off a confrontation between defendant and the deceased.

Nine-year-old Hershell Howell was on the back porch of his home when he heard the argument between defendant and Marvin Davis. According to Hershell, defendant said: "I'm tired of you, Marvin", and started stabbing him. Another man present with defendant knocked Marvin Davis down. Davis fell but struggled to stand up and run. Defendant stabbed Davis several more times, whereupon he fell a second time. Barbara Davis saw a part of the confrontation, though it appeared to her that the two men were beating Davis with their fists.

The medical examiner found three stab wounds closely grouped in the deceased's upper chest and one in the right front portion of his abdomen. He also discovered seven distinct stab wounds of lesser significance on the deceased's legs, right arm, and hands.

The theory of the defense, as reflected in opening statement, was that defendant stabbed Davis in self-defense. Defendant testified that Davis had rushed him and seized him by the throat and that he had retreated but that Davis reached for a knife. Defendant further testified that, believing his life to be in danger, he went for his own knife and lashed out at his attacker. Defendant could not explain how Davis had been stabbed so many times.

Defendant raises four issues on appeal, which we discuss in the order raised.

Defendant first claims that the trial court erred in allowing the testimony of an unendorsed prosecution witness to rebut the testimony of witnesses she had listened to in violation of a sequestration order. Part of the defense strategy had been to elicit testimony from res gestae witnesses concerning the deceased's reputation in the community as a violent person. Defense counsel was broadly permitted to inquire into specific instances of the deceased's conduct pursuant to MRE 405(b). Under the authority of this rule, both Tanitha and Emma White testified that they had heard that the deceased had stabbed his former wife, Ernestine Davis, causing her to lose her baby. When the prosecutor objected on hearsay grounds, the court advanced what appeared to be a simple solution: "Why don't you call his wife and ask her?"

Defendant objected, initially because Ernestine Davis had not been endorsed as a witness and later because Davis had been present in the courtroom despite the issuance of a blanket sequestration order. This objection being overruled, Ernestine Davis stated that, while her husband did stab her, she was not pregnant at the time.

Defendant's brief on appeal suggests that any testimony taken in contravention of a sequestration order constitutes reversible error, at least where defendant has been prejudiced by the admission of this testimony. This is in fact not the case. Whether to exclude a witness who has violated a sequestration order is within the trial judge's discretion. *People v Adams,* 122 Mich App 759; 333 NW2d 538 (1983); *People v Cyr,* 113 Mich App 213, 231; 317 NW2d 857 (1982), *lv den* 414 Mich 888 (1982); *People v Boose,* 109 Mich App 455; 311 NW2d 390 (1981). We find no evidence of abuse of discretion for several reasons. Initially,

there was no attempt on the part of either the witness or the prosecution to openly defy the sequestration order. As defendant admits on appeal, the witness had not been endorsed on the information. Certainly this was not a witness that the prosecution anticipated calling, and her testimony was introduced only to rebut testimony concerning a specific prior act of the deceased elicited by defense counsel's cross-examination. Secondly, the testimony contradicted by Ernestine Davis should not have been introduced into evidence in the first place.

MRE 404(a)(2) provides that evidence of a pertinent trait of character of the victim of a crime may be offered by an accused. This is consistent with prior Michigan law to the extent that it permits an accused claiming self-defense in a homicide case to offer proof that the alleged victim had a reputation as a violent person. *People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961). Additionally, MRE 405(b) provides that, in cases in which the character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct. Michigan courts have, however, recognized that such specific instances of conduct must have been known to the defendant. In *People v Perez,* 66 Mich App 685, 693; 239 NW2d 432 (1976), *lv den* 397 Mich 824 (1976), the defendant argued that the trial court had improperly excluded testimony that one of the complainants was involved in a knife fight the day before the charged incident. This Court noted that, unless the defendant could show that he knew of that incident or that it was directly connected with the homicide, the evidence should be excluded. See also *People v Kerley,* 95 Mich App 74, 79; 289

NW2d 883 (1980), *lv den* 411 Mich 868 (1981); *People v Knott,* 59 Mich App 105; 228 NW2d 838 (1975). Testimony from persons other than defendant concerning specific violent acts committed by the deceased was, therefore, objectionable absent some showing that defendant also knew of the incidents. This showing was not made.

Defendant's contention that his theory of self-defense was prejudiced by admission of the evidence is not persuasive. The record contains considerable testimony concerning the reputation of the deceased as a violent person, and Ernestine Davis admitted that the deceased had stabbed her with a knife. Even the prosecutor, in closing argument, conceded that the deceased had pulled knives on people and that the deceased had stabbed both Emma White and Ernestine Davis. Finally, the trial court brought to the jury's attention the fact that Ernestine Davis had been present in the courtroom during prior testimony. The jury was free to use that piece of information in assessing Ernestine Davis's credibility.

Defendant next asserts that he was denied effective assistance of counsel, principally because his trial counsel acknowledged on the record that he had a hearing impairment.

Claims that a criminal defendant was denied effective assistance of counsel due to a hearing defect are not common, and neither party on appeal has provided any direct authoritative guidance on this issue. See 74 ALR2d 1390, 1420-1423, superseded by 2 ALR4th 27, 203-210. Our research has not revealed a case in which a trial counsel's hearing impairment alone sufficed to constitute ineffective assistance of counsel. In *United States ex rel Castleberry v Sielaff,* 446 F Supp 451 (ND Ill, 1978), the defendant's appointed counsel was

72 years old and in poor health. Counsel suffered from impaired vision, and his hearing was severely impaired as evidenced by numerous instances during the trial where he asserted his inability to hear the testimony of the witnesses and the closing argument of the assistant prosecutor. However, the record contained numerous other indicia of ineffective assistance. Counsel had entered the case on the day of trial, had offered no pretrial motions or requests, was ignorant of the granting of a severance motion made by his predecessor, openly acknowledged little if any experience in criminal defense work, and made irrelevant and foolish comments during his opening statement and closing argument. In finding that the defendant had been denied effective assistance of counsel, the *Sielaff* court did not single out any of the above factors as dispositive of the case. *Sielaff, supra,* p 454. In this respect, the case resembles that of *United States v Rogers,* 471 F Supp 847 (ED NY, 1979), in which, aside from an obvious hearing impairment, counsel failed to pursue discovery, failed to move for a bill of particulars, exhibited a general lack of preparation for trial, and failed to abide by rulings of the trial court.

One case in which an ineffective assistance of counsel claim was based entirely on a claim that counsel could not hear properly is *People v Bell,* 95 Ill App 3d 803; 420 NE2d 497 (1981). There the court determined that there was no evidence that counsel's very slight loss of hearing prevented him from effectively representing defendant. Alternatively, the court determined that any possible problem had been cured when the trial judge appointed public defenders to sit with defense counsel during trial. 95 Ill App 3d 805. The *Bell* court's analysis is, however, cursory; more helpful

is the discussion of the court in *State v Richards,* 294 NC 474; 242 SE2d 844 (1978). In that case a criminal defendant claimed ineffective assistance of counsel when his trial attorney lost 90% of the hearing in his left ear during the course of trial. Lamenting the dearth of authority on this issue, the *Richards* court settled on the following analytical approach to the problem:

> "We think, however, and the cases seem to reflect, that the question does not turn on the physical incapacity of counsel as such, since this may or may not deprive a defendant of effective representation. Rather, it is necessary to examine counsel's specific acts or omissions which the defendant alleges constitute a denial of effective assistance. The reviewing court must approach such questions ad hoc and in each case view the circumstances as a whole. *State v Sneed, supra,* 284 NC 606; 201 SE2d 867 (1974). We also recognize that the trial judge, who actually sees the lawyer's behavior, is better able than an appellate court to evaluate the overall effectiveness of representation." *Richards, supra,* 294 NC 498.

The defendant's principal contention in *Richards* was that her attorney's hearing loss prevented him from raising objections to the admission of certain inadmissible evidence and from undertaking proper cross-examination of certain prosecution witnesses, claims roughly parallel to those advanced in the instant case. An examination of the record convinced the court in *Richards, supra,* that the defendant did not have ineffective representation as a result of counsel's disability. *Richards, supra,* 294 NC 502. Although counsel had indeed failed to object to the admission of certain evidence that could have been excluded, the court determined that his failure to object had been attributable to trial tactics. Moreover, the record

was "replete with objections, motions to strike, and other instances of [defense counsel's] vigorous efforts". *Richards, supra,* 294 NC 501.

Here too this Court should analyze the issue with reference to counsel's performance on the record, not merely because this form of analysis was employed by the *Richards* court, but because defendant's failure to move below for a new trial or an evidentiary hearing on the issue of ineffective assistance by necessity restricts this Court's review to the trial record. See *People v Johnson,* 124 Mich App 80; 333 NW2d 585 (1983).

As did the *Richards* court, we find counsel's performance at trial to have been quite adequate. Counsel participated in a thorough jury voir dire, engaged in complete cross-examination of res gestae witnesses, and presented a lengthy and comprehensive closing argument. He vigorously asserted the only defense which in our view could possibly have resisted the people's proofs—self-defense. Counsel successfully elicited testimony concerning the deceased's propensity for violence and exploited this evidence in closing argument. He also effectively prevented the prosecutor from impeaching defendant by evidence of previous offenses.

We reject defendant's contention that counsel made outcome-determinative mistakes. The brevity of counsel's cross-examination of the medical examiner clearly appears to have been a product of trial strategy, upon which this Court will not substitute its judgment. *People v Burns,* 118 Mich App 242, 247; 324 NW2d 589 (1982); *People v Lotter,* 103 Mich App 386, 390; 302 NW2d 879 (1981), *lv den* 412 Mich 852 (1981). The record is simply inadequate to support defendant's assertion that counsel failed to hear part of witness Cheryl

Howell's testimony or that a more concerted reliance on that testimony would have changed the jury's verdict.

Defendant's third claim of error is more disturbing. In closing argument, the prosecutor made a thinly disguised appeal to the jury's sense of civic duty. We have repeatedly warned prosecutors that they may not tempt the jury to convict based upon a sense of civic duty, *People v Phillips,* 112 Mich App 98, 113-114; 315 NW2d 868 (1982), *lv gtd* 414 Mich 866 (1982); *People v Wright (On Remand),* 99 Mich App 801, 808-811; 298 NW2d 857 (1980), *lv den* 410 Mich 854 (1980), or otherwise suggest to the jury that they decide the case on other than the evidence itself. *People v Bairefoot,* 117 Mich App 225, 231-232; 323 NW2d 302 (1982); *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971). A prosecutor who ignores this mandate risks reversal. See, *e.g., People v Wright, supra; People v Gloria Williams,* 65 Mich App 753, 756; 238 NW2d 186 (1975). This prosecutor's remarks were not inadvertent nor were they induced by the "heat of argument", hence this is a close case.

We decline, however, to reverse defendant's conviction. Initially, we find the evidence supporting guilt overwhelming. Defendant admitted killing Marvin Davis, and ample evidence was presented that the homicide was neither justifiable nor excusable. Additionally, although defense counsel objected to the prosecutor's argument, he did not do so on the grounds that the prosecutor was suggesting collateral reasons for conviction. Failure to correctly state the proper grounds for objection limits appellate review. *People v Worrell,* 111 Mich App 27, 38-39; 314 NW2d 516 (1981), *lv gtd* 417 Mich 888 (1983). Under the circumstances alluded to above, reversal is not appropriate. *Peo-*

ple v Jackson, 119 Mich App 138, 140; 326 NW2d 392 (1982); People v Eaton, 114 Mich App 330, 334-335; 319 NW2d 344 (1982); People v Avery, 114 Mich App 159, 168-170; 318 NW2d 685 (1982).

Defendant's final claim of error, that the court should have instructed the jury on the lesser-included offense of assault with intent to commit great bodily harm less than murder, is devoid of merit.

Defendant was charged with second-degree murder. Second-degree murder is the unjustified and unexcused killing of a human being with malice. While the actual intent to kill is not an essential element of the offense, the prosecution must establish that defendant created and disregarded a very high risk of death at the time of his assaultive activities. People v Jones, 115 Mich App 543, 554-555; 321 NW2d 723 (1982). The elements of assault with intent to commit great bodily harm include an attempt or offer with force or violence, to do corporal harm to another coupled with an intent to do great bodily harm less than murder. MCL 750.84; MSA 28.279; People v Leach, 114 Mich App 732, 735; 319 NW2d 652 (1982); People v Cronk, 9 Mich App 606; 157 NW2d 802 (1968); 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1038, p 977. Assault with intent to commit great bodily harm less than murder is a cognate lesser included offense of second-degree murder. See People v Fountain, 392 Mich 395; 221 NW2d 375 (1974).

Prior to closing arguments, defendant requested an instruction on assault with intent to commit great bodily harm less than murder. The trial judge declined to give such an instruction, finding there was no evidence to support a verdict on this charge. Defendant on appeal correctly asserts that a criminal defendant is entitled, upon request, to instruction on a lesser-included offense if sup-

ported by the evidence. See *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). In this case, the requested instruction was inconsistent both with record evidence and with defendant's self-defense claim. The defense theory conceded that defendant had killed the deceased with a knife. It is not error for a trial judge to refuse to instruct on assault with intent to commit great bodily harm as a lesser-included offense of second-degree murder where there is evidence that the deceased died as a result of traumatic injury and that defendant inflicted it. *People v Bullis,* 40 Mich App 246; 198 NW2d 441 (1972), *lv den* 388 Mich 761 (1972). Although there was evidence that a man named Terry knocked the deceased down at one point during the altercation, defendant conceded having inflicted the stab wounds. Additionally, the manner in which the deceased was killed is far more suggestive of malice than of the specific intent to commit great bodily harm less than murder. The physical evidence alone, as attested to by the examining pathologist, indicated that deceased had been stabbed ten times, with three of the wounds in the chest and one in the abdomen. Malice may properly be inferred from conduct the natural tendency of which is to cause death. *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971); 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1032, p 969. Certainly this was such conduct.

Finally, the requested charge was inconsistent with the defense of self-defense, as, had the jury been persuaded of the propriety of that defense, the homicide would have been justifiable and would not have constituted criminal conduct of any sort. Under the circumstances of this case, therefore, the trial court correctly denied the requested charge.

Affirmed.